## EMIL SCHUTZ, Respondent, v. THE DALLES MILITARY ROAD CO., Appellants.

Act of Congress for Construction of Dalles Military Road—
Requirements of Road Under.—An act of Congress, approved February 25, 1867, granted to the state of Oregon certain lands to aid in the construction of a military wagon road from Dalles City to a point on Snake river. It provided that such road should be built of such width and grade and with such bridges as to permit of its use as a wagon road, and in such other special manner as the state should provide, and that it should be free to the use of the United States in the transportation of its property, troops or mails: *Held*, that when an incorporated company accepted this grant from the state it undertook to construct the road in the manner then prescribed by the laws of the state for the construction of toll roads by private corporations, and to so maintain it.

Idem.—The building of such road of a less width than prescribed in the law relating to roads built by private corporations will render such company liable for any damages sustained by reason thereof.

Idem—Damages—Tolls Paid by Mail Carrier.—If the company fails to build bridges at necessary points on such road and a carrier of mails is compelled to cross bridges owned by others, he may recover the tolls which he is compelled to pay therefor from such company.

Idem—Carriers of Mails Exempt from Tolls.—The right reserved to the government of free passage for its mails exempts all persons from the payment of tolls who are engaged in carrying United States mails, whether such persons are contractors from the government or the employees of such contractors.

Appeal from Wasco County. The facts are stated in the opinion of the court.

*B. Whitten and W. H. Effinger,* for appellant.

*Hill, Durham & Thompson,* for respondent.

By the Court, Boise, J.:

The complaint alleges in substance that the appellant is a corporation organized under the laws of Oregon for the purpose of constructing and maintaining a wagon road from Dalles city in Wasco county, by the way of Canyon city and other points mentioned, to Fort Boise, Idaho territory, and collecting tolls thereon; that prior to the incorporation of appellant congress passed the act granting land to the state of Oregon to aid in constructing a military wagon road be-

tween the same *termini*, by which act it was provided that such land should be appropriated exclusively to the construction of such road; that the road so constructed should remain a public highway for the government of the United States, free from tolls and other charges upon the transportation of troops, mails and other property of the United States; that the road should be constructed with such widths, grades and bridges, as should permit of its regular use, as a wagon road, and in such other special manner as might be prescribed by the state of Oregon, all of which requirements were, by said act, made express conditions thereof; that on the twentieth of October, 1868, the state of Oregon, by an act of the legislature granted said lands to appellant upon the conditions, restrictions and limitations imposed by the act of congress; that appellant accepted the grant, with the rights and privileges and subject to the obligations connected therewith, and engaged in building and maintaining the road; that during the time the damages complained of were being suffered by respondent, the said road, from Dalles to Canyon city, was a duly established mail route of the United States, and one J. M. Gorman was contractor for carrying the mails over and upon the same, and was required to carry the mails as often as twice a week each way; that during that time, to wit, from April 1, 1876, to April 1, 1877, respondent was the duly authorized mail carrier on said route under said contractor, and did, as such mail carrier, during all that time, carry the mails upon and over said route, using for that purpose wagons, vehicles and teams, carrying said mails at his own expense; that the appellant did not construct the road with such widths, gradations or bridges as to permit its use as a wagon road, but wholly failed so to construct or maintain it, and neglected to construct or maintain the road in accordance with the said acts of congress and of the legislature of Oregon; that the road crosses a number of streams which are not fordable except at certain seasons of the year, and others that are not fordable at any time, specifying among these streams the Deschutes river, John Day river, and several of its branches and tributaries; that upon said streams ap-

pellant failed and neglected to build or maintain bridges or other means of crossing, as by said acts required; and that by reason of such failure and neglect respondent has suffered damages, in carrying said mails and as such carrier, in the sum of two thousand six hundred and ninety-four dollars, by breaking and injuring wagons and other vehicles necessarily employed in carrying the mails, in tolls and ferriage which he was compelled to pay on private bridges in order to cross said streams, in delays and consequent expense, in moneys necessarily expended in making the road passable for the mails, and in extra labor, and hire of extra wagons in order to carry the mails, which would have been unnecessary had not the appellant so neglected and failed to construct and maintain said road as required by said acts. All these matters are set out in the complaint with particularity and directness, and a bill of particulars of the damages is filed.

The answer admits the incorporation to build the road and collect tolls, but denies that it undertook to maintain the road; admits the acceptance of the grant, with its conditions and obligations, and alleges that appellant did construct the road with such widths, gradations and bridges as to permit its regular use in transporting the troops, mails, etc., of the United States, under the provisions of said act of congress, and that long before respondent became mail carrier the road was examined and accepted by George L. Woods, then governor of Oregon, as constructed in accordance with the requirements of said acts; that the acceptance of the road by said Woods, as governor, was approved by the secretary of the interior before the time when respondent claims to have become mail carrier; denies any knowledge as to whether Gorman was mail contractor, as alleged; denies that respondent was a duly or otherwise authorized mail carrier at the time of the alleged damages; admits the road was a mail route, but denies that respondent, as such carrier, carried the mails over the route; denies knowledge as to whether, in carrying the mails over the route, it was necessary to use wagons or other vehicles, or whether the mails were carried at respondent's expense;

denies the alleged neglect and failure to construct the road and bridges as referred to by the said acts, or that appellant has failed or neglected to maintain the road in good repair; denies knowledge as to whether there are any streams that are not fordable; denies the alleged damages and the facts out of which they are alleged to have arisen; avers that while respondent was carrying the mails, as alleged, he was also carrying passengers and freight, not for the United States, and that his damages resulted from that fact and not from unfitness of the road to be used in carrying the mails; denies each item of the damages stated in the bill of particulars.

For further answer it is alleged that prior to the first day of January, 1876, the appellant abandoned its right to the road and its right to collect tolls thereon.

It is further alleged that the respondent has no legal capacity to sue, in this, that he has no contract with Gorman; and that originally the contract for carrying the mails and the route in controversy was a part of a contract with one De Lacy, who failed to perform the contract on his part, and it was afterwards let to Gorman; that while De Lacy was contractor he let this route to Ad. Edgar, who thereafter employed J. H. Marshbanks and John Davis to carry the mails, and these latter sold out to respondent.

That whatever interest respondent may have had in carrying the mails over the route in question, was a certain proportion of the contract price therefor, and was in violation of the laws and regulations of the United States on that subject, and was void.

The reply denies the averment of compliance by appellant with the law, in the construction of the road; denies knowledge as to whether the governor of Oregon accepted it; and the same as to approval by the secretary of the interior; denies that respondents' damage resulted from carrying passengers and freight; denies the abandonment of the road by appellant, the averments concerning his legal capacity to sue, and the averment of facts supposed to render his interest as mail carrier illegal and void.

The first assignment of error is that the court erred in

admitting the testimony of the respondent in regard to the contract under which he was carrying the United States mails over that part of the route.

This assignment of error seems to be based on the following part of the bill of exceptions: "The plaintiff offered himself as a witness in his own behalf, and testified that he was mail carrier on that part of mail route 44,140, between Dalles and Canyon city, and was such at the time the alleged damages accrued, carrying the United States mails by himself and his employees, in stage coaches and on buck-boards drawn by horses; that one J. M. Gorman was the contractor with the United States government for the carrying the said mails, and that he, plaintiff, was carrying said mails under said Gorman's contract, and received pay therefor from said Gorman. To the introduction of this evidence defendant's counsel objected, and the objection was overruled, to which ruling of the court the defendant's counsel excepted."

It is claimed by appellant that this evidence was improperly admitted, for the reason that the laws of the United States forbids the sub-letting of mail contracts, and that it was improper to allow evidence to show that respondent was carrying the mail under Gorman, who was the contractor. (U. S. Postal Laws 1873, p. 57, sec. 271.) It appears from this statement that respondent was employed to carry the mail, and that he received his pay for so doing from Gorman. We think the law of congress referred to does not prohibit a contractor from employing persons to assist him in carrying the mails. Such a construction would render the transportation of the mails difficult, if not impracticable.

The second error assigned is that the court erred in instructing the jury that: "Under the acts of the legislature and under the act of congress, the defendant was and is obliged to keep the road in such condition as that the mails, among other things, may be safely, securely, and expeditiously transported over it."

An act of congress, approved February 25, 1867, granted to the state of Oregon certain lands to aid in the construction of a military wagon road from Dalles city on the Columbia river by way of Camp Watson, Canyon City and Mormon

or Humboldt basin, to a point on Snake river opposite Fort Boise in Idaho territory. It also provided that the land so granted should be applied exclusively to the construction of said road. Section second of said act provided that the state legislature should dispose of these lands for the purpose of building said road, and for no other purpose; and that said road shall remain a public highway for the use of the government of the United States, free from tolls or other charges upon the transportation of any property, troops or mails of the United States. Section 3 provides that said road shall be constructed with such width, gradation and bridges, as to permit of its regular use as a wagon road, and in such other special manner as the state of Oregon may prescribe.

The state of Oregon, by an act approved October 20, 1868, granted these lands to the appellant for the purpose of aiding said company (the appellant) in constructing the road mentioned and described in said act of congress upon the conditions and limitations therein prescribed. When the appellant accepted the grant it undertook to construct and maintain said road in such condition as to enable the mails to be transferred over it with safety and convenience to the mail carrier.

The act of the state legislature did not particularly prescribe the manner of constructing the road, but we think that the appellant, when it was organized as a corporation to construct a road in Oregon, undertook to construct it in the manner then prescribed by the laws of the state for the construction of such roads. While the road remained under the control of appellant it was obliged to maintain the same, and we think this instruction was not erroneous.

The third ground of error assigned is to the following instruction: "It was the duty of the road company to construct the road sixteen feet in width generally, and where there was necessity for cuts of six feet deep or more, the road need not be more than ten feet wide, with turnouts sixteen feet wide every quarter of a mile of such cut. This rule is not to be construed rigidly. A variation of a few feet will not be regarded as a material departure from the

law." This instruction is correct so far as it charges the jury that the road must be sixteen feet wide generally and ten feet in the deep cuts. We think the court erred in saying to the jury that a variation of a few feet will be disregarded. A road is not of legal width when less than sixteen feet generally and ten feet in the cuts of six feet and upwards. If accidents occurred occasioned by the road not being constructed the legal width, the company would be liable for damages occasioned thereby, but this error did not injure the appellant, and it can not allege the same as error.

The fourth error assigned is to the following instruction: "It was the duty of the road company to construct bridges over such streams along the road as are not fordable, but when such streams are conveniently fordable at all seasons of the year the road company was not obliged to build bridges. Before plaintiff can recover he must show that he was engaged in transporting the United States mails; and upon this point it is sufficient if the testimony shows that the mails were delivered to him or his employees and by him or them transported over the route." The first part of this instruction is correct, being in accordance with the statute of Oregon prescribing the manner in which such roads shall be constructed. (Statute, p. 531, sec. 30.) The last part of the instruction is correct, for if the respondent was recognized by the United States officers and the mails delivered to him, and by him transported, we think he would be a sufficiently accredited mail carrier to be entitled to pass over said road free of tolls.

The fifth error alleged is to the following instruction: "On the subject of tolls I charge you that under the law a mail carrier or one employed in transporting the mails, has a right to pass along the Dalles military road and over the bridges over the streams on said road without paying tolls therefor. If the Dalles military road company has failed to build bridges at necessary points, and the plaintiff had to cross the streams over bridges owned by others and paid tolls therefor, he may recover the same; but the amount of toll which he can recover is such as would have been charged

for such vehicles and teams as could have conveniently taken the mails." As has before been said it was the duty of the said road company to construct bridges over the streams on their road. If they had not done this we think the respondent, if by reason of their negligence in not constructing bridges had to incur expense in passing over bridges owned by other persons and pay tolls therefor, it was a damage which resulted to him from such negligence of the appellant, and that the appellant would be liable for the same. And as to the amount of such damage, the measure would be what he had to pay to pass said bridges, which is correctly stated in this instruction now under consideration.

The sixth ground of error is alleged to be the refusal of the court to give this instruction: "That a contract with the government to carry the mails, either directly or through others, is not the government of the United States carrying the mails; and that the government of the United States was only and is entitled, when carrying by itself said mails, to have free transportation for its mails as by the contract under which the defendant as alleged took its grant." This instruction is not skillfully worded and is scarcely intelligible, but we suppose the appellant's counsel desired the court to say to the jury that the United States in order to have a right to pass its mails over this road free of toll must carry the mail itself and not by its mail contractors. We think this is not correct. The government being a corporation can not do any act except through agents, and all persons are its agents who are employed to perform its functions. Among these are those who are employed by the government to carry the mails. Where one person contracts with the government to carry the mails over long routes such contractors have authority to employ others under them to assist them, for where any person is employed to do a certain thing he has implied authority to employ the means necessary to accomplish it. Any other conclusion would defeat the accomplishment of the purpose of the government in letting the contract to carry the mails, and we think

there was no error in the refusal of the court to give this instruction.

These considerations dispose of the questions raised in the case, and as we find no substantial error in the proceeding of the circuit court its judgment will be affirmed.