## UNITED STATES v. DALLES MILITARY ROAD Co. et al.

*(Circuit Court, D. Oregon. October 7, 1889.)*

1. PUBLIC LANDS—GRANTS—DALLES MILITARY ROAD.
    The Act Cong. Feb. 25, 1867, (14 St. 409,) granted to the state of Oregon lands to aid in the construction of a military wagon road from Dalles City to Fort Boise. Section 3 of the act provides that "said road shall be constructed with such width, gradation, and bridges as to permit of its regular use as a wagon road, and in such special manner as the state of Oregon may prescribe." By an act passed October 20, 1868, the state of Oregon transferred the grant to the Dalles Military Road Company, but prescribed no "special manner" for constructing the road. *Held*, that these two acts formed the entire statutory contract with the road company, and that the statute of Or. Oct. 14, 1862, relative to the construction of roads by private corporations, which had no reference to this specific road or grant, did not affect the question between the United States and the road company as to whether the latter had constructed the road in the manner and within the time as prescribed by the act of congress.

2. SAME.
    There being nothing in either act requiring the road company, or any one claiming under it, to maintain the road after it had been once completed and accepted by the government in accordance with the provisions of the acts, without any such fraud as to vitiate the acceptance, its right to the lands against the United States vested irrevocably upon such acceptance.

Bill in Equity to forfeit lands under the act of congress, approved March 2, 1889, entitled "An act providing in certain cases for the forfeiture of wagon road grants in the state of Oregon." 25 St. 850. On exceptions to portions of the bill for impertinence.

*L. L. McArthur*, U. S. Atty., and *W. C. Johnson*, for plaintiff.

*James K. Kelly*, *C. S. Ward*, and *Dolph & Bellinger*, for defendants.

Before SAWYER, Circuit Judge.

SAWYER, J. The first paragraph of the bill sets out the substance of the act of congress passed February 25, 1867, entitled "An act granting lands to the state of Oregon, to aid in the construction of a military wagon road from Dalles City, on the Columbia river, to Fort Boise, on

the Snake river," found in 14 U. S. St. 409.    The second paragraph in like manner sets out the substance of the statute of Oregon, passed October 20, 1868, entitled "An act donating certain lands to Dalles Military Road Company," found in the statutes of Oregon for 1868, p. 3.    Notwithstanding these allegations in the second paragraph it is alleged in the third, "that the state of Oregon never, at any time, passed any laws whatsoever, for the specific purpose of carrying the act of congress into effect," meaning only, it must be presumed, in view of the preceding allegations of the bill, that it never passed any law other than that set out, or any law prescribing any "other special manner" of constructing the road than that prescribed in the said act of congress, as it was authorized to do by section 3 of that act.    The bill then proceeds to aver: "But long before the passage of the act of congress" the state legislature did pass "An act providing for private corporations, and the appropriation of private property therefor," which act provided, that any road constructed by such corporation, should be constructed in a certain manner, of a certain width, etc., fully described in the act; also, for bridging and ferrying streams, with many other particulars, and that said act has been in force, at all times, since its passage on October 14, 1862.    This passage is excepted to as impertinent, the said statute being, as contended, inapplicable, and having no relation to the road as constructed, or required to be constructed by defendant—the Dalles Company, under and in pursuance of the congressional grant to the state of Oregon, and the statute of Oregon, set out in the bill transferring the said grant to the Dalles Company upon the same "conditions and limitations" as in the act of congress prescribed, and no others.    I am satisfied, that this exception must be sustained.    Section 3 of the act of congress provides, "that said road shall be constructed with such width, gradation, and bridges, as to permit of its regular use as a wagon road, and in such special manner, as the state of Oregon may prescribe."    Congress was providing for the construction of this particular road, and made no reference to any other road, or to any existing statute of Oregon.    It does not say, in "such special maner," as the statutes of Oregon have heretofore provided "for roads constructed under its authority and laws," or "in such 'special manner' as the laws of Oregon now provide for the construction of roads, toll or otherwise, by corporations or private parties," but in such other "special manner, as the state of Oregon may prescribe."    That is to say, may hereafter prescribe, when regranting the lands to aid in the construction of the road, or in hereafter, contracting with parties to construct the road, either for the lands, or for a money consideration, to be paid in whole, or in part, out of the proceeds of the lands.    The act of congress, evidently, contemplates future, not past action—such "other special manner" as the state *may* prescribe for this particular road—not such as it has already, heretofore prescribed for other roads, toll or otherwise.    This is the only limitation prescribed by congress in this particular.

Upon examining the statute of Oregon, transferring the congressional grant to the Dalles Military Road Company, it will be seen that no "spe-

cial manner" of constructing the road was therein prescribed, and the Dalles Company was not limited to any description of road to be constructed, other than that found in the act of congress itself.   The statute is a special, independent act, limited to the very object named in and contemplated by the act of congress, and referring to no other road or object.   In the preamble it recites the act of congress *verbatim* in full, and then provides "that there is hereby granted to Dalles Military Road Company incorporated   *   *   *   all lands, right of way, rights, privileges and immunities heretofore granted or pledged to this state by the act of congress in this act heretofore recited, for the purpose of aiding said company in constructing the road mentioned and described in said act of congress, upon the conditions and limitations therein prescribed." Laws 1868, p. 5.   There is no reference to any prior statute of Oregon, and no description at all of the road to be constructed by the defendant; no "special manner" prescribed, nothing except the description in the act of congress itself.   It simply adopts the provisions of that statute, and by that act the rights of the Dalles Company, so far as governing the land grant under the act of congress is concerned, are entitled to be judged. This is special legislation relating to a single specific subject-matter, and we are not to import into it other conditions which the legislature has itself omitted to incorporate.   As the state of Oregon, in transferring the congressional grant of land to the defendant, in consideration of its building the road, did not prescribe any "special manner" in which it should be built, or any manner other than that prescribed by congress itself, when the conditions prescribed by the act of congress were performed within the time limited, the right to the lands became fully and irrevocably vested.   The terms of the statutory contract between the state and the Dalles Company are found in the two acts—the act of congress granting the lands to the state on the conditions alone prescribed in it, and the state act in express terms granting them to the Dalles Company upon precisely the same conditions and limitations, no others having been inserted.   The act of the state of Oregon without other conditions therein than those prescribed in the act of congress, operated as a transfer or assignment to the company of the congressional grant without restriction, and it was only necessary for the company to perform those conditions, in order to become entitled to the lands.   Prior legislation, therefore, upon a subject-matter, having no reference to this specific road, or this specific land grant, cannot affect the question between the United States and these defendants as to whether the road was constructed by the Dalles Company in the manner and within the time prescribed in the act of congress, and the statute of Oregon strictly following the provisions of the act of congress, without prescribing any future conditions.   It may have been necessary for the Dalles Company to perform conditions enjoined by the statutes of Oregon, other than those prescribed by the acts now in question, in order to entitle it to enjoy other rights under other laws of Oregon.   But if so, those conditions, and the independent rights acquired by their performance, are wholly outside of and foreign to this investigation, and with which we now have no concern.   Our in-

quiry is limited to the requirements of the statutory contract set out. The first exception must, therefore, be sustained, the matter excepted to being impertinent to this inquiry.

The next exception is to the allegation relating to maintaining the road after construction, in case it was constructed in accordance with the act. The allegation is that the road "was not and never has been maintained as a public highway by either or any of the defendants herein, or any person or persons claiming any interest in the lands embraced within the limits provided for by the said act of congress." And the other exceptions all relate to similar allegations as to "maintaining the road" after construction, not to a failure to construct the road in accordance with the contract. It is contended that these allegations are impertinent, because the defendants, under the terms of the contract, embodied in the act of congress and the act of the legislature of the state of Oregon, set out in the bill, were not under any obligation to maintain the road after it had been once constructed in accordance with the terms of the contract. And this view appears to me to be correct, so far as the vesting of the right of the defendant to the lands is concerned. I can find nothing in either act that requires the Dalles Company, or anybody holding under it, to maintain the road, after it has been once completed, in accordance with the terms of the statutory contract, and been approved and accepted by the government, through its agent, for that purpose duly appointed by the statute and contract, the parties acting in good faith, and there being no such fraud as should vitiate such approval and acceptance. The lands were granted in the words of the statute, "to aid in the construction" of the road. "The lands hereby granted shall be exclusively applied to the construction of said road, and to no other purpose." After the completion of 10 miles a quantity of land "not to exceed 30 sections, may be sold, and so on from time to time until said road shall be completed." There is nothing said in either act about maintaining the road after its completion. When the road has been completed, honestly approved. and accepted in accordance with the provisions of these two statutes, the contract has been fully executed on the part of the Dalles Company, and the contract having been fully performed, its right to the lands has irrevocably vested. The grant is *in præsenti* and there is no provision for forfeiture in case the road is not afterwards maintained. It is provided that if the road is not "completed" within the time prescribed, no more lands shall be sold and those "unsold shall revert to the United States." But no provision is made for their forfeiture for not maintaining the road after completed. The contracting party, after completing the road in pursuance of the terms of the statute, might then abandon it and leave it to the state or the government, or whoever else may have an interest in it, either to take care of it or allow it to go to destruction, so far as any rights or liabilities under these two statutes are concerned. As well might one who has contracted with a builder for the erection of a house upon certain specifications for a specified price, after the completion of the structure is accordance with the contract, and acceptance of the house require the builder to ever after maintain it in repair.

It must be remembered that we are now, in this suit, dealing with the rights only of these parties—the United States and these defendants—arising out of this statutory contract for the construction of the road in question.    If the Dalles Military Road Company, or any of these defendants, after the full performance of this statutory contract, and after their right to the land had fully vested under it, assumed to own and control this road, keep it as a toll-road as to all parties other than the United States, or exercised any other rights under other statutes of the state of Oregon, or if any liabilities accrued to the United States, the state of Oregon, or to private parties, arising under other statutes or laws of either the United States or the state of Oregon, that is a matter wholly foreign to the inquiry now before the court.    We are to deal simply with this statutory contract, and even in relation to that, which is the only thing we could under any circumstances, deal with, we are limited in our inquiry by the statute under which the suit is brought to three points:

1. We are to determine the question of seasonable and proper completion of said roads in accordance with the terms of the granting acts, either in whole or in part—not according to the terms of other acts, state or national.

2. The legal effect of the several certificates of the governors of the state of Oregon of the completion of said roads and the right of resumption of said granted lands by the United States.

3. And we must determine these questions in a manner "saving and preserving the rights of *bona fide* purchasers of either of said grants, or of any portion of said grants, for a valuable consideration."    25 U. S. St. 851.

There is nothing here said about "maintaining" the roads after construction.    Manifestly, congress in passing this act had no idea that the Dalles Company were required by either or both of the acts in question to maintain the road after completion, in accordance with the statutory contract.    We are only to deal with the statutory contract for constructing the roads and ascertain whether the contract in that particular has been performed wholly or in part, and if not fully performed, what are the rights of the parties under the governors' certificates, notwithstanding the failure to wholly or in part comply with the contract; and what are the rights of *bona fide* purchasers if these certificates can be successfully assailed and disregarded so far as participants in the fraud are concerned?

The case of *Schutz* v. *Road Co.*, 7 Or. 264, has been confidently cited, as establishing a view different from that now adopted.    In that case the question now under consideration was not necessarily, or at all involved, and there was no occasion to determine, whether the statutory contract was performed in such sense as to entitle the Dalles Company to the lands in question, or whether under the two acts now in question, considered by themselves, said company was required to maintain the road after completion in accordance with these statutes alone.    The instruction under discussion, in that case, may have been entirely correct, under the other general laws of Oregon, requiring parties who assume to

own, or, at least, control and operate a public road for tolls collected or other proper consideration.    Liabilities may well accrue against such parties in favor of the United States, the state of Oregon or private parties for their neglects or violations of duty.    But if so, the liability in question did not result alone from a breach of the statutory contract, now under consideration, nor did the court so decide.    The plaintiff was a private party, carrying the United States mail under a contract with the government.    He did not sue on this statutory contract for a breach either as an original party or as assignee of the United States.    The United States were in no sense parties to the suit.    The suit was for a breach of duty to maintain the road under the laws of Oregon, and the statutes in question were drawn in to show a right to use the road without charge.    But if the court intended to assert, which I do not think it did—that this statutory contract alone required the Dalles Company to maintain this road after it had been completed according to the contract, and accepted then I cannot concur in that view.    That case might have been, indeed should have been, and it doubtless was, disposed of upon entirely different considerations—upon the rights of the parties arising out of an assumption on the part of the company to own and control the road, and to collect tolls thereon under other laws of Oregon. The right to collect tolls is a franchise granted only by the state.    There was no such franchise granted by the acts in question.    The case shows that it was decided in 1879 and arose many years after the road was required to be completed by the act of congress of 1867 in question; that the defendant therein was a corporation organized under the laws of Oregon "for the purpose of constructing and maintaining" the road "and collecting tolls thereon;" (7 Or. 259;) "that it neglected to construct or maintain the road in accordance with the said acts of congress and of the legislature of Oregon," (Id. 260;) and the answer admits the incorporation to build the road and collect tolls, (Id. 261.)    Manifestly, then, the corporation was in the exercise and enjoyment of other franchises and different rights, than those derived under the acts of congress and legislation of Oregon now in question, for neither of these acts makes any reference whatever to any such franchise or rights, and other laws of Oregon were properly before the court for consideration in that case, and doubtless it was upon those laws that the opinion of the court was predicated.    There seems to be some confusion of ideas in the theory upon which that case was presented.    The two acts now under consideration, constituting a statutory contract for the construction of this road, have no necessary connection with that case except so far as to exempt the United States from tolls, unless by virtue of other statutes in no wise affecting the contract with which we are dealing, and the rights of the United States, and these defendants under it.    That road might just as well have been constructed under the acts in question by any other corporation, or private individual, had the grant been assigned to them, and having been completed and accepted, and the contractor having afterwards withdrawn, the Dalles Military Road Company might then have taken possession of the completed road, under other statutes of Oregon,

and kept and maintained it as a toll-road, in the management of which many obligations and liabilities might have arisen, having no relation whatever to the acts and statutory contract for the mere construction of the road. There is no necessary connection whatever between this statutory contract and its performance, or non-performance, and the maintaining and operating of this road, as a toll-road after its completion and acceptance, either by the parties constructing it or others; and the rights of the United States and the defendants under these specific statutes, cannot in any way be affected by the arrangement between the state and the Dalles Company and its grantees made under other statutes, having no special reference to the construction of the road under the acts in question. The rights resting upon different statutes must stand or fall upon the statutes applicable to the specific subject-matter, and can neither be aided nor impaired by other acts having no relation to them. The one class should not be confounded with the other. Undoubtedly, this road, having been constructed under the act of congress, the state could not impose or authorize others to impose tolls or other charges upon the United States, or prevent its use free from tolls or other charges by the government for the transportation of any property, troops, or mails. The supreme court of Oregon, therefore, might very properly have affirmed the correctness of the charge given in the case cited upon other statutes of Oregon, either alone or in conjunction with the act of congress in question, without at all considering the questions now before the court, as to what is required to be done by the Dalles Company, by the statutory contract now under consideration unaffected by other statutes. The questions in the two cases are entirely distinct, and should not be confounded.

Upon the views expressed all the exceptions to the bill for impertinence must be sustained, and it is so ordered.