McINTYRE *et al.* v. ROESCHLAUB *et al.*

(*Circuit Court, D. Colorado.* February 7, 1889.)

PUBLIC LANDS—RAILROAD GRANTS—EXCEPTIONS—HOMESTEAD ENTRYS.
    The word "attached," in 12 U. S. St. at Large, 492, (the Union Pacific land grant act,) granting land "to which a pre-emption or homestead claim may not have attached at the time the line of said road is definitely fixed," means the filing of an entry in regular form by a settler; and the fact that subsequently to the definite location of the road such an entry is set aside because made by a person not entitled to hold a government claim, gives the company no right to the land.

In Equity. Bill by Marion W. McIntyre and others against Henry F. Roeschlaub and others, to set aside a homestead entry. On demurrer to bill.

*Wells, McNeal & Taylor*, for complainants.

*Teller & Orahood, Rogers & Webber*, and *Daniel Witter*, for defendants.

BREWER, J. This is a bill filed by the complainants against the defendants to have a certain entry adjudged null and void, and to establish their title to the lands in controversy. The lands in controversy are a part of the body of lands lying south-west from Denver, the title to which is involved in the case of *U. S.* v. *Railway Co.*, *ante*, 551, recently decided in this court. The complainants claim under the railway company; the defendants by a homestead entry. So far as the general question as to the title of the railway company to these lands is concerned, I have nothing to add to what I said in the opinion filed in that case, and if that were the only question, decree would have to go for the complainants as prayed. But it further appears that, prior to the filing of the line of definite location, one Mary S. Hooper had filed in the proper

land-office her claim to said lands as her homestead, and that the entry thus made had not been set aside at the time of filing such definite location. To invalidate this proceeding complainants allege that said Mary S. Hooper never settled or resided upon the lands, or made any improvement thereof, or ever attempted or intended so to do; that the entry was a pure matter of speculation, and for no other purpose; that she was an alien, and had never been naturalized, and therefore was not qualified to make such entry; that immediately after the filing of her pretended claim she abandoned the territory of Colorado and moved to the territory of New Mexico, and this pursuant to an intention formed at the time she made her filing; that the Kansas Pacific Railway caused proceedings to be commenced to avoid such entry, which proceedings were finally successful, but not until after the time of filing the line of definite location. In other words, at the time of filing the line of definite location, and when the company's title became fixed, there was a homestead entry, regular in form, and apparently valid, but made by a person unauthorized to make such an entry, and without the purpose of complying with the requisite conditions. The entry was one that, when challenged, could not be sustained, and was in fact thereafter set aside. Did the grant to the Kansas Pacific attach to these lands? The decision of the supreme court in the case of *Railway* v. *Dunmeyer*, 113 U. S. 629, 5 Sup. Ct. Rep. 566, establishes the fact that if the homestead entry had been a valid one the land would not have passed to the railroad company. The contention of complainants is that because it was subject to be set aside upon proper proceedings it must be treated as invalid, and amounting to nothing, and therefore not interfering with the grant to the company. The original grant to the company was of land "to which a pre-emption or homestead claim may not have attached at the time the line of said road is definitely fixed." 12 St. at Large, 492. In the opinion in the *Dunmeyer Case*, *supra*, Mr. Justice MILLER uses this language:

"In the case before us a claim was made and filed in the land-office, and there recognized, before the line of the company's road was located. That claim was an existing one of public record in favor of Miller when the map of plaintiff in error was filed. In the language of the act of congress this homestead claim had attached to the land, and it therefore did not pass by the grant. Of all the words in the English language, this word 'attached' was probably the best that could have been used. It did not mean mere settlement, residence, or cultivation of the land, but it meant a proceeding in the proper land-office by which the inchoate right to the land was initiated. It meant that by such a proceeding a right of homestead had fastened to that land, which could ripen into a perfect title by future residence and cultivation. With the performance of these conditions the company had nothing to do. The right of the homestead having attached to the land, it was excepted out of the grant as much as if in a deed it had been excluded from the conveyance by metes and bounds."

Within the reasoning of that case, I think the contention of the complainants cannot be sustained. So far as the records of the land-office disclose, a proper homestead entry had attached. The government had

accepted the filing of the entry by Mary Hooper. Whether it should afterwards permit that entry to ripen into a perfect title, or should challenge her right to perfect the entry, were matters resting solely in the discretion of the government. The right to inquire into the validity of the proceedings in the land-office, regular in form, was not granted to the railroad company. Such right of inquiry remained personal to the government. It occupied the position, not of a vendor, but of a donor. It limited its gifts to lands to which a homestead right had not attached. Whenever it accepted a homestead entry, its acceptance removed the land from the terms of the grant. What should become of the matter thereafter as between the person making the entry and the government was a matter that did not affect the railway company. It had no right to inquire. The government might have waived all the informalities and defects in the person, or in the occupation, and issued its patent. Whether it did or not was a matter of which the railroad company could not complain. It was enough for it that upon the face of the records there was an apparently valid homestead entry, one which the government had recognized, and one which it might finally permit to ripen into a perfect title. The homestead claim, whether good or bad, in the language of the act, attached; and that is all the railroad company could inquire into. That being settled, the land did not pass under this grant. For this reason the demurrer to the bill will be sustained.