## NEFF v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. November 23, 1908.)

No. 2,613.

1. FORGERY (§ 12*) — TRANSMITTING FORGED INSTRUMENTS TO OFFICER—SUFFICIENCY OF INSTRUMENTS TO FORM BASIS OF CHARGE.

When a false instrument or affidavit is so palpably and absolutely invalid that it cannot defraud or inflict loss or injury under any circumstances, it may not form the basis of a charge of forging it, or of uttering it, or of transmitting it to the officer to defraud the United States.

But if under any contingency it may have the effect to deceive and defraud, it is sufficient to found a conviction of such an offense upon.

[Ed. Note.—For other cases, see Forgery, Cent. Dig. §§ 28–47; Dec. Dig. § 12.*]

2. FORGERY (§ 12*)—FORGED INSTRUMENT ERRONEOUSLY RECEIVED IN EVIDENCE MAY FORM BASIS OF OFFENSE.

A forged instrument or affidavit regarding a material fact erroneously received in evidence by the officers of a local land office in the trial of a claim to land within their jurisdiction may deceive them and defraud the United States, and hence may form the basis of a conviction under section 5418 (U. S. Comp. St. 1901, p. 3666), because a patent issued upon it by the Land Department would be impervious to collateral attack, and the United States would be estopped from avoiding it and from recovering the land even by a direct attack after the title to it passed to an innocent purchaser.

If the land and the claim were beyond the jurisdiction of the Land Department, the transmission of such an affidavit to its officers could not defraud the United States nor form the basis of a conviction under that section.

[Ed. Note.—For other cases, see Forgery, Cent. Dig. §§ 28–47; Dec. Dig. § 12.*]

3. FORGERY (§ 12*)—INSTRUMENT SUFFICIENT IF VALID ON FACE.

Such an instrument or affidavit is sufficient if it is apparently valid on its face, although extrinsic facts may exist that would render it void or ineffective if genuine.

[Ed. Note.—For other cases, see Forgery, Cent. Dig. §§ 28–47; Dec. Dig. § 12.*]

4. FORGERY (§ 12*)—INSTRUMENT IS SUFFICIENT ALTHOUGH OTHER EVIDENCE OR ACTS INDISPENSABLE TO MAKE IT EFFECTIVE.

It is not indispensable to a conviction for transmitting a forged affidavit to an officer to defraud the United States, or to a conviction of forgery, or of uttering a forged instrument, that the affidavit, the forgery, or the uttering shall be sufficient in itself, without other evidence or acts, to win the controversy or to accomplish the object of the wrongful act. It is enough that it may under some contingency aid to bring about that result.

[Ed. Note.—For other cases, see Forgery, Cent. Dig. §§ 28–47; Dec. Dig. § 12.*]

5. PUBLIC LANDS (§ 36*)—FORGERY (§ 12*)—TIMBER-CULTURE ENTRY DOES NOT EXPIRE THIRTEEN YEARS AFTER DATE—LOCAL OFFICERS HAVE JURISDICTION TO HEAR AND ALLOW PROOF THEREAFTER.

The acts of Congress and the regulations of the Land Department permitted one who had made a timber-culture entry to prove his compliance with their requirements within 5 years after the expiration of 8 years from the entry, and gave to the local officers of the Land Department jurisdiction to receive, consider, and approve, or reject in the first instance, final proofs of claims to the public land. They also provided that a notice of the taking of final proofs should be published, and that such proofs

should be taken within 10 days after the time specified in the notice. More than 14 years after the date of his entry an entryman applied to the local officers to make final proofs, and the notice was published.

*Held:* (1) The timber-culture entry did not expire or become ineffectual by the mere expiration of the 13 years from its date, and the officers of the local land office had jurisdiction to receive, to consider, and to approve or reject, final proofs thereon thereafter.

(2) A forged affidavit which appeared on its face to have been taken more than 10 days after the date named in the notice, which was transmitted to the officers by the defendant and was received and approved by them as a part of the proof, was sufficient to form the basis for a conviction under section 5418, Rev. St. (U. S. Comp. St. 1901, p. 3666).

(3) A forged affidavit which was sufficient to aid in making, but was insufficient in itself to make, the proof, was enough to form a basis for a conviction under section 5418.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 36;* Forgery, Cent. Dig. §§ 28–47; Dec. Dig. § 12.*]

6. PUBLIC LANDS (§§ 117, 138*)—LAND DEPARTMENT—PATENT IS JUDGMENT AND IMPERVIOUS TO COLLATERAL ATTACK—INNOCENT PURCHASER'S TITLE UNDER IMPREGNABLE—"PATENT TO LAND."

A "patent to land" is the judgment of the Land Department and a conveyance of the title in execution of it to the party adjudged entitled, and, when the land described in it was within the jurisdiction and subject to the disposition of the department, is impervious to collateral attack.

An innocent purchaser's title under such a patent is impregnable. It may not be avoided by the United States by a direct attack.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 323, 324, 368; Dec. Dig. §§ 117, 138.*]

For other definitions, see Words and Phrases, vol. 6, pp. 5230, 5231; vol. 8, p. 7748.]

(Syllabus by the Court.)

In Error to the District Court of the United States for the District of Kansas.

I. E. Lambert (E. C. Cole and Humbert Riddle, on the brief), for plaintiff in error.

Harry J. Bone and J. S. West, for the United States.

Before SANBORN and HOOK, Circuit Judges, and PHILIPS, District Judge.

SANBORN Circuit Judge.   Section 5418 of the Revised Statutes provides that every person who falsely alters any affidavit for the purpose of defrauding the United States, and any person who transmits to or presents at the office of any officer of the United States for such purpose any false, forged, or altered affidavit knowing it to be false, forged, or altered, shall be punished by fine or imprisonment, or both (U. S. Comp. St. 1901, p. 3666).

On March 15, 1889, Lemuel T. Williams made a timber-culture entry of a tract of land in the state of Kansas, and on September 25, 1903, his final proof was allowed by the register and receiver of the proper local land office, and the usual receiver's final receipt was issued to him. The defendant below was convicted and sentenced under section 5418 for altering the affidavit of Williams made on August 1, 1903, and for transmitting to the register and receiver this altered af-

fidavit and the forged affidavits of Clarence A. Younggren and James A. Ridpath, which together form the proof of Williams' compliance with the statute upon which the receiver's receipt was founded. This judgment is assailed on the ground that none of these affidavits could have defrauded the United States of the land for which Williams obtained this receipt, because they were made and transmitted too late, because they were incompetent evidence, and because they constituted insufficient proof of Williams' claim.

The main contention is that the affidavits could not have defrauded the United States because, before they were made or presented, the entry of Williams, which was made March 15, 1889, had expired and become ineffectual for every purpose under the act of June 14, 1878 (chapter 190, §§ 2, 3, 20 Stat. 114), which governed it, and which provided (1) that if, at any time within five years after the expiration of eight years from the date of the entry, the entryman should prove by two credible witnesses that he had cultivated the trees required by the act, and had otherwise complied with the acts of Congress, he should receive a patent for the land, and (2) that, if at any time after the entry and before the issue of the patent the entryman failed to comply with the requirements of the acts of Congress relating thereto, the land should be subject to entry under the homestead laws or under the timber-culture laws after notice to the original entryman had been given and a determination of the rights of the parties had been made as in other contested cases. The proposition is that under this act the entry was dead 13 years after March 15, 1889, or on March 15, 1902, and that the affidavits presented in 1903 could not have deprived the United States of the land. In support of this position counsel cite Northern Pacific Railroad Company v. De Lacey, 174 U. S. 622, 630, 633, 19 Sup. Ct. 791, 43 L. Ed. 1111, in which there is a decision that notwithstanding an uncanceled pre-emption entry made and abandoned in 1859 the United States had, in 1861 and 1884, "full title not reserved, sold, granted, or otherwise appropriated, and free from preemption or other claims or rights" to the lands subject to the entry, and that no portion thereof had been "granted, sold, reserved, occupied by homestead settlers or otherwise disposed of" within the meaning of the exceptions to the grant to the Northern Pacific Railway Company by the act of July 2, 1864 (chapter 217, 13 Stat. 365), and Oregon & C. R. Co. v. United States, 189 U. S. 103, 23 Sup. Ct. 673, 47 L. Ed. 726, in which the Supreme Court held that, notwithstanding an uncanceled entry under the Oregon donation act of September 27, 1850 (chapter 76, 9 Stat. 496), as amended by Act Feb. 14, 1853 (chapter 69, 10 Stat. 158), made and abandoned in 1853, the land which was the subject of the entry was not "granted, sold, reserved, occupied by homestead settlers, pre-empted, or otherwise disposed of" on July 25, 1866, within the meaning of the grant to the Oregon Central Railroad Company of that date (14 Stat. 239, c. 242). But these decisions are far from holding that, because those abandoned entries were ineffective against the railroad companies at the times when their respective grants took effect, no one who made or presented forged affidavits to the officers of the Land Department upon the trials of the claims made under those

entries could be guilty of the offense denounced by section 5418. In the former case the pre-emptor presented in 1887 to the register and receiver of the land office the proof of his claim initiated by his entry in 1859, and those officers and the Commissioner of the General Land Office approved his proof and sustained his claim, but the Secretary of the Interior reversed their decision and awarded the land to the railroad company. If the pre-emptor and his witnesses had knowingly made or presented forged affidavits to the officers of the Land Department upon the hearing upon his claim before them for the purpose of defrauding the United States out of the land there in controversy, would they have been guiltless of the offense specified in section 5418 because the receipt of those affidavits in evidence and the award of the land to the pre-emptor were legal errors? An affirmative answer to this question, which the maintenance of the proposition of counsel demands, ignores the radical difference between the action of a judicial or of a quasi judicial tribunal beyond its jurisdiction and its erroneous action within its jurisdiction. The former is void. But the latter is impregnable to collateral attack, and voidable, if at all, only by a direct proceeding for that purpose. Let it be conceded that if the affidavits transmitted by the defendants could not have been used before the local officers of the Land Department to defraud the government of the land which Williams claimed, then the defendant could not have been guilty of the offenses charged against him; that, if the officers of the Land Department could not have issued a patent upon these affidavits that would have deprived the United States of the land, the use of the affidavits to obtain the patent could not have defrauded it; but if those officers could have issued such a patent upon those affidavits, then they might have been used to defraud it. Let it be further conceded for the purpose of the first consideration of this question that the entry of Williams had expired, that it was error for the officers of the Land Department to receive the affidavits in evidence, that it was error for them to decide that the original entry was still effective, and that it was error for them to determine that the entry and the affidavits proved that Williams was entitled to the land. Nevertheless, might not the United States have been deprived of the land by their decision in favor of Williams and their patent issued upon the affidavits? By the act of March 3, 1849 (chapter 108, § 3, 9 Stat. 395; Rev. St. § 441 [U. S. Comp. St. 1901, p. 252]), the Secretary of the Interior is charged with the supervision of the public business of the United States relating to the public lands; and by the act of July 4, 1836 (chapter 352, § 1, 5 Stat. 107; Rev. St. § 453 [U. S. Comp. St. 1901, p. 257]), the Commissioner of the General Land Office is required to perform, under the direction of the Secretary of the Interior, all executive duties appertaining to the surveying and sale of the public lands of the United States, or in any wise respecting such public lands, and also such as relate to private claims of land, and the issuing of patents for all grants of land under the authority of the government. Applicants for the public lands are required to apply in the first instance to the register and receiver of the local land office of the district in which the land is situated. Act May 10, 1800, c. 55, §§ 7, 8,

2 Stat. 75; Rev. St. §§ 2223, 2247, 2295 (U. S. Comp. St. 1901, pp. 1362, 1371, 1398). The land to which Williams attached his timber-culture claim was public land subject to the disposition of the Land Department and within its jurisdiction. When a claim is made under the homestead, the pre-emption, or the timber-culture laws to a portion of the public domain that is subject to its disposition, the Land Department must hear the evidence offered and decide whether or not the claimant is qualified to acquire the lands under the terms of those laws, whether or not the land claimed is subject to the laws, and whether or not the claimant has so complied with the requirements of those laws as to entitle him to the title to the land. The Land Department of the United States, including in that term the Secretary of the Interior, the Commissioner of the General Land Office, and their subordinate officers, constitutes a special tribunal vested with the judicial power to hear and determine the claims of all parties to the public land which it is authorized to dispose of, and to execute its judgments by conveyances to the parties entitled to them. A patent to land which that department has the power to dispose of is both the judgment of that tribunal and a conveyance of the title to the land to the party adjudged to be entitled to it, and it is impervious to collateral attack for errors of law or mistakes of fact committed in the decision of the case it determines. Moore v. Robbins, 96 U. S. 530, 533, 24 L. Ed. 848; United States v. Winona & St. Peter R. Co., 15 C. C. A. 96, 104, 105, 106, and cases there cited, 67 Fed. 948, 956, 957 958; James v Germania Iron Co., 46 C. C. A. 476, 479, 107 Fed. 597, 600.

It is true that the United States, or any party who has the equitable title under it, may maintain a bill in equity to set aside such a patent or to declare it to be held in trust either on account of error of law, fraud, or gross mistake (James v. Germania Iron Co., 107 Fed. 597, 600, 46 C. C. A. 476, 479), but in the hands of an innocent purchaser for value the title under such a patent is impregnable, and the United States may not maintain a bill to avoid the patent or to recover the title (United States v. Burlington, etc., R. Co., 98 U. S. 334, 342, 25 L. Ed. 198; United States v. California & C. Land Co., 148 U. S. 31, 41, 13 Sup. Ct. 458, 37 L. Ed. 354; United States v. Winona & St. Peter R. Co., 15 C. C. A. 96, 109, 67 Fed. 948, 961; United States v. Detroit Timber & Lumber Co., 200 U. S. 321, 333, 26 Sup. Ct. 282, 50 L. Ed. 499; United States v. Detroit Timber & Lumber Co., 131 Fed. 668, 677, 67 C. C. A. 1, 10; Colorado Coal Co. v. United States, 123 U. S. 307, 309, 322, 8 Sup. Ct. 131, 31 L. Ed. 182; United States v. Clark [C. C.] 125 Fed. 774, 776).

In June, 1903, Williams applied to the local officers of the Land Department to prove up his timber-culture claim. His original entry of March 15, 1889, was uncanceled upon the books of the Land Department. The land was subject to the disposition of the officers of that department, and the power was vested in the local officers, and the duty was imposed upon them, to hear and decide the question whether or not Williams was entitled to a patent to the land. The land, the issue, and the parties were within the jurisdiction of the Land Department, and the first action and hearing upon the application of

Williams was within the jurisdiction of the register and receiver of the local land office. If it was error for the officers of that department to receive the forged affidavits in evidence and to hold that Williams' original entry was still effective, nevertheless those affidavits might have been used before them to defraud the United States out of the land by procuring a title to Williams and then causing this title to be conveyed to an innocent purchaser. The defendant, therefore, cannot escape punishment on the ground that the affidavits were incapable of use before the officers of the Land Department to defraud the United States. The argument that one who by false affidavits deceives a judicial officer and induces him to render an erroneous judgment ought to escape the punishment prescribed for such deceit because he also induces the officer by means of those affidavits to commit an error of law in their reception and in his rendition of judgment upon them does not appeal to the reason with persuasive force.

And right here is the answer to some other objections of counsel for the defendant. Under the acts of Congress and the rules of the Land Department, a notice of the making of final proof under a timber-culture claim was required to be published 30 days, and proof by affidavit might be taken at the time specified in the notice or at any time within 10 days thereafter. Act March 3, 1879, c. 192, 20 Stat. 472 (U. S. Comp. St. 1901, p. 1392); Act March 2, 1889, c. 381, § 7, 25 Stat. 855 (U. S. Comp. St. 1901, p. 1393); Rev. St. § 2294 (U. S. Comp. St. 1901, p. 1396); Circular General Land Office of January 25, 1904, pp. 74 to 77. The published notice given in Williams' case specified July 18, 1903, as the time for taking the proof, and the forged affidavit of Ridpath which was received and approved by the register and receiver as part of Williams' proof purported to have been sworn to on September 12, 1903. The receipt in evidence and the submission to the jury of this affidavit is specified as error on the ground that it was not taken in time and was a nullity. The affidavit appeared on its face to have been taken 46 days after the time fixed for its taking by the statute and the rules of the department, but the parties to any litigation may, by express declaration or by silent acquiescence, waive objections to the time and to the method of procuring evidence therein; and after the publication of the notice in Williams' case the only parties to the proceeding before the officers of the Land Department were the United States, the vendor of the land in question which was present by those officers, and the purchaser, Williams. It may be that their waiver of objections to the Ridpath affidavit on account of the apparent time of its taking would have been unavailing against a third party who had fastened a legal or equitable claim upon the land. But there is no evidence that there was any such party, and the Ridpath affidavit was offered in proof by the defendant for Williams and was received and acted upon without objection by the United States. Is every deponent who testifies falsely in a deposition taken without adequate notice or out of time after notice, and every one who knowingly puts in evidence a forged deposition which appears to be so taken, exempt from prosecution for perjury or for presenting a forged deposition because the deposition might have been excluded on the objection of

some party for an apparent irregularity in the time or manner of taking? The answer seems to be evident. Van Steenbergh v. Kortz, 10 Johns. (N. Y.) 167, 169; Montgomery v. State, 10 Ohio, 220; Chamberlain v. People, 23 N. Y. 85, 80 Am. Dec. 355; Pratt v. Price, 11 Wend. (N. Y.) 128. This is not a prosecution for perjury, or for forgery, or for uttering a forged instrument. The count now under consideration charges the commission of the offense created by section 5418 of transmitting the false or forged Ridpath affidavit to an officer of the United States knowing the same to be false and forged for the purpose of defrauding the government. The offense is statutory, but it is akin to the uttering of forged instruments. Established rules of law applicable to cases of this nature are that, where the instrument or affidavit is so palpably and absolutely invalid that it cannot under any circumstances inflict loss or injury, the charge of the offense cannot be sustained, but if under any contingency the forged instrument may be prejudicial, it is sufficient to form the basis of a conviction (State v. Briggs, 31 Vt. 501, 502; Dunn v. People, 4 Colo. 126; 1 Wharton's Criminal Law, § 680; Van Sickel v. People, 29 Mich. 61, 63); and that, if the instrument or affidavit is apparently valid on its face, it is sufficient upon which to base a conviction of the offense, although collateral or extrinsic facts may exist that would render it void if genuine (State v. Hilton, 35 Kan. 339, 348, 11 Pac. 164; Wharton's Criminal Law, § 1093; People v. Rathbun, 21 Wend. [N. Y.] 509, 520; State v. Johnson & Johnson, 26 Iowa, 407, 418, 96 Am. Dec. 158; State v. Pierce, 8 Iowa, 231, 235). In State v. Hilton an official proof of death which consisted of the affidavit of a physician and an affidavit of the defendant that the deceased died on May 2, 1885, and the affidavit of the undertaker and the certificate of the clergyman that his funeral and burial were on March 4, 1885, was forwarded to the insurance company. These affidavits and this certificate were upon a single piece of paper, or were attached together so that they constituted a single entity. They were sent to the insurance company but it discovered the discrepancy of the dates and did not pay the alleged loss. The defendant was convicted of forging the undertaker's affidavit and the clergyman's certificate, and his counsel insisted that these instruments were not subjects of forgery because the fact clearly appeared from the affidavits of the physician and the defendant, which were attached to them, that they could not be true. The court, however, overruled this contention, and held that the undertaker's affidavit and the clergyman's certificate must each be considered by itself; that, so considered, each of them formed a sound basis for a charge of forgery, although the extrinsic facts which prevented them from deceiving the insurance company and accomplishing their purpose appeared in the other portions of the proofs which were attached to them. The affidavit of Ridpath was valid on its face, and it was only by the collateral and extrinsic facts that the notice had been published and that it had specified July 18, 1903, as the time for taking the proof, that the objection to it could be made to appear.

If the Ridpath affidavit had been genuine it would have been valid. It purported to have been taken before an officer authorized to admin-

ister the oath, it contained proof of the cultivation of Williams' land, and any false swearing in it to a material matter was declared to be perjury by the act of May 26, 1890, c. 355, 26 Stat. 121 (U. S. Comp. St. 1901, p. 1396). There were contingencies in which it might have inflicted injury upon the United States, the contingency that it should be used, as it undoubtedly might have been, to induce the register and· receiver to give a new notice and opportunity to take testimony in Williams' case and that false testimony should then be presented, and the contingency which actually arose that the objection to the affidavit because it appeared to have been taken too late should be waived by the government, and its officers should receive and approve the proof which the affidavit aided to present.

It is contended that the affidavit of Williams which was altered by the defendant and sent to the officers was both incompetent and insufficient to sustain either charge based upon it, because the statutes and the regulations of the department required that it should be supported by the testimony of two credibile witnesses and the affidavit of only one witness was taken within the 10 days after the time specified in the notice. Counsel further insist that none of the affidavits was either competent or sufficient to base any charge in the indictment upon, because no proof was made before the officers of the Land Department that the failure of Williams to make his proof within the 13 years arose from ignorance, accident, or mistake. Section 2457, Rev. St. (U. S. Comp. St. 1901, p. 1520). In support of these objections they cite cases in which instruments absolutely and palpably void on their faces, like deeds and wills which have but one witness when the law renders them void unless they have more, have been held not to be subjects of forgery. Pearson v. Commonwealth, 117 Ky. 731, 78 S. W. 1128; Moffit's Case, 2 East's P. C. 954. But each of the affidavits in this case was apparently valid on its face, effectual to aid in proving the case and susceptible of use with other proof to defraud the United States of the land; and it is not necessary to a conviction for perjury, or for uttering a forgery, or for presenting a forged affidavit to an officer to defraud the United States, that the false swearing, the forgery uttered, or the forged affidavit transmitted should be sufficient in itself, without other evidence or acts to sustain the issue in controversy, or to accomplish the purpose of the offense. It is enough that it may be under some contingency aid to bring about that result. State v. Dayton, 23 N. J. Law, 49, 53 Am. Dec. 270; Wood v. People, 59 N. Y. 117; State v. Flagg, 27 Ind. 24; State v. Molier, 12 N. C. 263.

Moreover, the essence of all the offenses charged against the defendant in the second, fifth, and seventh counts of the indictment was the use of the affidavits known by him to contain fraudulent statements made to defraud the United States of the land. He transmitted these affidavits to the officers, and secured the receiver's final receipt for the land by means of them. He thereby represented to the United States that they were lawfully taken, competent and sufficient to warrant the action which he induced the officers to take thereon, and it would seem that he is thereby estopped from denying that they were so. In-

graham v. United States, 155 U. S. 434, 437, 15 Sup. Ct. 148, 39 L. Ed. 213; National Loan & Investment Co. v. Rockland Co.; 36 C. C. A. 370, 372. 94 Fed. 335, 337.

This case has been treated thus far upon the theory that the proposition that the entry of Williams expired 13 years from its date, and that it was error for the officers of the local land office to receive, consider, or approve thereafter proof that Williams had complied with the statutes in every other respect, except the time of his presentation of his proof, was sound. But in the authorities cited by counsel for the defendant that proposition was neither considered nor decided. The question there considered was the conflicting claims of entrymen who had abandoned their entries years before the United States made grants to railway companies, and the claims of the beneficiaries of those grants. The general rule, repeatedly announced by the Supreme Court and followed by the Land Department, is that an entry of public land under the laws of the United States segregates it from the public domain, brings it within the exceptions of the railroad land grants, appropriates it to private use, and withdraws it from subsequent entry or acquisition until the prior entry is officially canceled and removed. Bardon v. Northern Pacific Railroad Co., 145 U. S. 535, 12 Sup. Ct. 856, 36 L. Ed. 806; Wilcox v. McConnell, 13 Pet. 498, 513, 10 L. Ed. 264; Witherspoon v. Duncan, 4 Wall. 210, 218, 18 L. Ed. 339; Carroll v. Safford. 3 How. 441, 11 L. Ed. 671; Kansas, Pacific Railroad Co. v. Dunmeyer. 113 U. S. 629, 5 Sup. Ct. 566, 28 L. Ed. 1122; Hastings & Dakota R. R. Co. v. Whitney, 132 U. S. 357, 10 Sup. Ct. 112, 33 L. Ed. 363; Whitney v. Taylor, 158 U. S. 85, 15 Sup. Ct. 796, 39 L. Ed. 906; McIntyre v. Roeschlaub (C. C.) 37 Fed. 556; Hartman v. Warren, 22 C. C. A. 30, 33. 76 Fed. 157, 160; James v. Germania Iron Co.. 107 Fed. 597, 603, 46 C. C. A. 476, 482; Railroad Company v. Forseth, 3 Land Dec. Dep. Int. 446, 447; Railroad Company v. Leech, Id. 506; Hollants v. Sullivan, 5 Land Dec. Dep. Int. 115, 118; In re Milne, 14 Land Dec. Dep. Int. 242. The decisions in Northern Pacific Railway Company v. De Lacey, 174 U. S. 622. 19 Sup. Ct. 791, 43 L. Ed. 1111, and Oregon & C. R. Co. v. United States, 189 U. S. 103, 23 Sup. Ct. 673, 47 L. Ed. 726, treat of cases the peculiar facts in which the Supreme Court takes great pains to show excepted them from this general rule. If the question treated in the authorities just cited had been presented to the officers of the Land Department, it would be somewhat difficult to hold that it would have been error for them to have decided according to the general rule which prevails in the courts and in the Land Department. But that issue was not before them. No grantee of the United States, no rival claimant, demanded Williams' land. The United States had offered to sell it to him in consideration that he would cultivate trees upon it for 8 years, and had given him 5 years thereafter to prove that he had done so. Williams had entered the land, and, according to the affidavits presented to the officers, had accepted the offer and cultivated the trees. The proof presented to them established the fact that he had complied with the terms of the sale in every respect except that he had not proved his compliance until about 18 months after the expiration of the 5

years. Time is not ordinarily of the essence of a contract for the sale of land which has been substantially performed unless made so by the express terms of the agreement. There was no provision of the statute or of the contract under it to the effect that a failure to make the proof within the 5 years should forfeit the claim or the right of the entryman. On the other hand, the statute provided simply that he should receive a patent if he made the proof within the 5 years; and that if at any time before the patent issued, whether before or after the expiration of the 5 years, he failed to comply with the terms of the law, the land should be subject to entry again after notice to him and after a determination of the rights of the parties as in other contested cases. Chapter 190, §§ 2, 3, 20 Stat. 114. Why did the statute require a notice to the entryman and a decision of his rights after as well as before the expiration of the 13 years? The rational, if not the unavoidable, answer is, because his entry and his cultivation of the trees for 8 years gave him the right to the patent, at least as against the vendor, the United States, under the familiar rule that time is not ordinarily the essence of a contract under such circumstances.

Where a grant has been made to a railroad company on the express condition that it shall construct, equip, furnish, and complete its entire road by a time certain, and it completes it after that time, its grant is not lost by the expiration of the time before the subsequent completion of the railroad. St. Paul & Pacific R. R. Co. v. Northern Pacific R. R. Co., 139 U. S. 1, 11 Sup. Ct. 389, 35 L. Ed. 77; Schulenberg v. Harriman, 21 Wall. 44, 62, 22 L. Ed. 551; United States v. Southern Pacific Ry. Co., 146 U. S. 570, 606, 13 Sup. Ct. 152, 36 L. Ed. 1091; Farnsworth v. Minnesota & Pacific R. R. Co., 92 U. S. 49, 67, 23 L. Ed. 530; United States v. Northern Pacific R. R. Co., 177 U. S. 435, 440, 20 Sup. Ct. 706, 44 L. Ed. 836; United States v. Northern Pacific Railroad Co., 37 C. C. A. 290, 304, 95 Fed. 864, 878. And no sound reason occurs to us why such a forfeiture should be inflicted upon an entryman under the timber-culture act who has for 8 years cultivated the trees upon the prairie and substantially complied with the requirements of the statute. It is, and it ought to be, the rule and practice of the Land Department that when a default is cured by an entryman before notice of contest, or notice that any other party claims or desires to enter the land, his entry stands. Heptner v. McCartney, 11 Land Dec. Dep. Int. 400; Thompson v. Bartholet, 18 Land Dec. Dep. Int. 96; Boulware v. Scott, 2 Land Dec. Dep. Int. 263; Stanton v. Howell, 9 Land Dec. Dep. Int. 644; Sewell v. Rockafeller, 10 Land Dec. Dep. Int. 232; Meads v. Geiger, 16 Land Dec. Dep. Int. 366. It was, and it ought to be, the practice of the Land Department for the local officers to receive, consider, and act upon the final proof of timber-culture claims after the expiration of the 13 years. Morris Collar Case, 13 Land Dec. Dep. Int. 339; Pattin v. Smith, 21 Land Dec. Dep. Int. 315; Timpson v. Longnecker, 22 Land Dec. Dep. Int. 59; Zickler v. Chambers, 22 Land Dec. Dep. Int. 208; Carter v. Davidson, 24 Land Dec. Dep. Int. 288, 291.

Whether or not, after the consideration and approval of the proof by the local officers, the case should be referred to the equitable board

of adjudication under sections 2450 to 2457 (U. S. Comp. St. 1901, pp. 1518–1526), before the patent issues is immaterial in this case, because decisions sustaining entries alone may be submitted to that board (Hawley v. Diller, 178 U. S. 476, 478, 20 Sup. Ct. 986, 44 L. Ed. 1157), and in order to get the case before the board the proof of the entry-man must be taken by the local officers, considered, and sustained. Our conclusion is that it is not error for the officers of the local land office after the expiration of 13 years from the date of a timber-culture entry to receive, consider, and approve competent evidence that the entryman complied with the terms of the statutes in every respect except the making of his proof within the 13 years, and in view of this conclusion also the false affidavits were clearly capable of being used to defraud the United States.

Counsel argue that there was a fatal variance between the averments in the third and fifth counts of the indictment and the proof, but the record fails to sustain their position. The indictment set forth the words interlined in the affidavit of Williams, and that affidavit as it read after the interlineation. The proof was that the defendant made the interlineation charged in the indictment, and that he made others not there charged, and that the modified affidavit was as set forth in the indictment. The fact that the government proved interlineations that it did not plead constituted no variance, in view of the fact that its proof of the interlineation charged, and of the changed affidavit corresponded with its averments.

There was no error in the trial of this case, and the judgment below is affirmed.