KING ET AL., respondents, *v.* MERK, appellant.

OCCUPYING-CLAIMANTS' ACT OF KANSAS — *Eviction* — *Breach of covenant of warranty.* — Under the occupying-claimants' statute of Kansas (Gen. Laws 1868, p. 749, secs. 601–613), after judgment has been rendered against the occupying claimant, the successful plaintiff has the right to tender a deed for the land to the occupying claimant, and to demand from him the value of the same, without the improvements, and in default of payment to have a writ of possession in his favor; or he has a right to pay for the improvements and take the land, and the right to elect how it should be disposed of. Such a right, obtained and held by virtue of a paramount title, is equivalent to an eviction of the occupying claimant, and gives the latter a right to maintain an action against his grantor for breach of a covenant of warranty in the deed under which he holds.

*Appeal from First District, Madison County.*

THE opinion states the facts.

H. N. BLAKE, for the appellant.

There was no eviction, as alleged in complaint, to support the judgment, and none proved, such as would have entitled plaintiff to maintain action. 3 Neb. 76; 4 Neb. 133; 38 Mich. 90; 27 Kan. 594; 5 Col. 240; Sedgw. on Damages, 152–158; 3 Mont. 379, 472.

SAMUEL WORD, for the respondent.

No technical eviction was necessary to the maintenance of the action or for the substantial conformity of the proof. to the allegations.

Plaintiff was entitled to recover what was paid for outstanding paramount title with costs and attorney fees. Cases given are cited in the opinion.

WADE, C. J.　This is an action to recover damages for an alleged breach of a covenant of warranty.

It appears from the findings of fact, that on the 24th day January, 1861, Frederick R. Merk, the defendant and appellant, for a valuable consideration, deeded the lands described in the complaint to one Ellen M. Myers, with full covenants of warranty; that on the 13th day of July, 1868, the said Ellen M. Myers, for a valuable consideration, by a proper deed of conveyance, conveyed said lands to Mary McCracken King, the plaintiff and respondent, and that George A. King was, on and prior to the institution of this action, the husband of said respondent; that on the 1st day of March, 1873, one Marcus D. Claypoole, in the district court within and for the county of Leavenworth, and state of Kansas, instituted an action against these respondents and others to recover title to and possession of said lands; that upon the trial of said action it was found and adjudged that said Claypoole had the legal title and right of possession to the lands described in the complaint, subject only to the right of respondents herein, under and by virtue of the provisions of the statute of Kansas, entitled the " Occupying-claimant law," and the refunding of taxes paid by respondents herein on said lands; that on the 12th day of December, 1874, said court ordered and decreed that the said plaintiff Claypoole have and recover of and from the respondents herein the lands described in the complaint in this action, and the possession thereof, and that execution issue therefor; that thereupon the respondents made application to said court for the benefit of the provisions of said occupying-claimant law, and for the appointment of a referee, to report the taxes and assessments paid on said lands by respondents, together with interest to the date of said report; that thereupon the court ordered that proceed-

ings be had under said statute of Kansas for the benefit of occupying claimants, and that a referee be appointed to report the amount of said taxes and assessments, and that no execution issue in favor of said Claypoole, except for costs, until the assessments should be made by a jury, to be impaneled under the provisions of said statute.

And it was further ordered that until such report be made by said referee, and all balances in favor of respondents, against whom such execution shall issue, should be paid as provided by law under said occupying-claimant act, execution should not issue, except for costs; that said Claypoole appealed in said action to the supreme court of the said state of Kansas, and that at the January term thereof, 1879, the judgment of the district court rendered in said cause was affirmed, with costs, and a judgment was rendered by said supreme court directing that execution issue without delay on said judgment; that afterwards, in the month of July, 1879, a jury was impaneled under said occupying-claimants' law, to estimate the value of the lasting and valuable improvements for which the respondents claimed to be entitled from said Claypoole; that on the 8th day of July, 1879, a sealed verdict was filed with the clerk of the district court of Leavenworth, Kansas, and on the 1st day of September, 1879, application was made to have this verdict opened, which was then done by order of the court, and on September 25, 1879, a motion was made to confirm said report, and no further proceedings were had in said case in said court; that afterwards, in October, 1879, the respondents, for the purpose of purchasing their peace, quieting their title, and retaining possession of the premises mentioned in the complaint herein, compromised said suit with said Claypoole, and paid to him the sum of $100, and in consideration thereof he gave to the respondents herein a quitclaim deed for the premises described in said complaint, whereby the controversy as to the title of said premises was terminated, and the respondents remained in possession thereof, no execution having issued, and said re-

spondents not having been actually evicted; that the appellant herein derived his title to said premises from one John Kerr, which title was, in said suit of Claypoole against these respondents, declared and determined by said district court of Leavenworth county to be void; that the title of the lands described in the complaint herein, granted and warranted as aforesaid by the said appellant to the said respondents, wholly failed; that soon after the commencement of said suit by Claypoole against these respondents for said premises the respondents duly notified the said appellant that they had been sued by said Claypoole for said premises, and notified the said appellant to come in and defend the title of the respondents to said premises, which he wholly neglected and refused to do, and that the respondents necessarily expended in and about the defense of said suit, in order to protect their possession and title, the following sums, to wit: For costs paid, $200.50; fees paid attorneys, $600; amount paid Claypoole to quiet title, $100 — total, $900.50.

Whereupon it was ordered and adjudged by the court that the respondents do have and recover of and from the appellant the sum of nine hundred dollars and fifty cents ($900.50) and costs. From this judgment the defendant below appeals to this court.

The effect of the judgment against Claypoole, and the proceedings under the occupying-claimant act of the state of Kansas, will depend very much upon the provisions of that act. That statute provides, in substance, that in all cases any occupying claimant in the quiet possession of land, for which such person can show a plain and connected title, in law or equity, derived from the records of some public office, or being in quiet possession of and holding the same by deed from and under any person claiming title so derived, shall not be evicted or turned out of possession by any person who shall set up and prove an adverse and better title to such lands, until said occupying claimant, or his heirs, shall be paid the full value of all valuable and lasting

improvements made by him on such lands, or by the person under whom he holds the same, previous to the commencement of the suit on the adverse claim by which eviction may be effected, unless the occupying claimant shall refuse to pay the person so setting up and proving an adverse and better title, the value of the land without the improvements made thereon, upon demand of the successful claimant.

If judgment is rendered against the occupying claimant in favor of the adverse title, either party may demand a jury, and have the value of the lands without the improvements assessed, and the successful claimant may, at his election, either demand of the occupying claimant the value of the land without improvements, and tender a deed of the land in question to the occupying claimant, or he may pay the occupying claimant the value of the improvements, and have a writ of possession issued in his favor.

If the successful claimant shall elect to receive the value without the improvements, and shall tender a general warranty deed of the land, conveying the adverse or better title, and the occupying claimant shall refuse and neglect to pay the value of the lands without the improvements to the successful claimant, then a writ of possession shall issue in favor of the successful claimant. And it is further provided that the occupying claimant shall in no case be evicted from the possession of such land except as provided in this statute, and that if the occupying claimant pays into court the value of the land without the improvements (the successful claimant having made his election to surrender the land), the court shall decree him a title accordingly. And it is further provided that the plaintiff (the successful claimant) shall be entitled to an execution for the possession of his property in accordance with the provisions of this statute, and not otherwise. Gen. Laws Kansas, 1868, p. 749, secs. 601–613.

The substance and effect of this act was not materially affected by subsequent legislation, and remained in force

when the transactions mentioned in the findings took place. *Stephens* v. *Ballou*, 27 Kan. 594.

Upon the rendition of this judgment in favor of Claypoole, whereby his paramount title to the land described in the complaint as conveyed with covenants of warranty by appellant to respondent had been established and confirmed, and the proceedings under the occupying-claimants' statute of the state of Kansas had taken place, as recited in the findings of facts, he, Claypoole, had the unquestioned right to tender a deed for the land to the occupying claimant, and to demand from him the value of the same without improvements, and in default of payment to have a writ of possession in his favor, or he had a right to pay for the improvements and take the land; he had the absolute title to the land, and the right to elect how it should be disposed of. He might take immediate possession or sell to the occupying claimant. Such a right as this, given and held by virtue of the paramount title, is equivalent to an eviction. The title belonged to Claypoole, and he had the right to compel the occupying claimant either to purchase or surrender the land. In such a case the formal act of taking possession and ousting the claimant is not material.

The payment of $100 by respondents to Claypoole was not a donation. It was compelled in order to prevent Claypoole from taking possession under his adverse and better title. When the paramount title is established, and the right to evict becomes certain and absolute, and the exercise of the right is only defeated by the payment of money, the mere act of going through the form of taking possession and evicting the claimant is not necessary in order to give to the grantee, under a covenant of warranty, a cause of action. As in the case of a surety on a promissory note, he may pay and have an action against his principal without going through the form of having a judgment and execution against the surety, so the occupying claimant may pay before the writ of possession issues to evict him, when such payment will prevent eviction, and have his ac-

tion upon his grantor's covenants of warranty. Having
the right to evict, because of a paramount title, and receiv-
ing money in consideration of the conveyance of such title
to the occupying claimant, whereby an actual ouster is pre-
vented, creates a cause of action in favor of such claimant
against his grantor upon the grantor's covenant of war-
ranty. If, in such a case, before making such a conveyance,
the owner of the paramount title should go through the
form of taking actual possession under his adverse title,
such formal act would add nothing to the right of the occu-
pying claimant under his grantor's covenant of warranty.
All the damages consequent upon the establishment of, the
paramount title had occurred, and taking possession for the
purpose of a technical ouster and eviction merely, would not
have added or taken from them.

In the case of *Turner* v. *Goodrich*, 26 Vt. 709, Chief
Justice Redfield, who delivered the opinion of the court,
said: "We have now the case of a suit brought by one
having an elder and better title, and before final judgment,
the covenantee, to prevent being dispossessed of the land,
purchases in the title at a fair rate. This, no doubt, in justice
and moral equity, is the same thing as an eviction. . . .
When the covenantee is in possession of the land, and the
suit is brought, or the title asserted in any way, perhaps,
whereby it becomes impossible for the covenantee longer
to maintain his possession, it is the same thing whether he
yields without suit, or after judgment to a writ of seizin
and possession, or buys in the outstanding title at a fair
rate. Of course, if he yields to a claim of title without suit,
or without judgment, or notice to the covenantor to defend
his title, he assumes the burden of showing the title to
which he yields good; and so also if he purchases in the
outstanding title; and in either case he must rebut all pos-
sible implication of collusion. But this is a matter of evi-
dence, and when established it should, and as we regard the
recent decisions, does, constitute a breach of the covenant
of warranty, and entitles the party to recover the amount

paid to obtain the title and all expenses necessary in the premises, which must extend to the costs of the suit while pending and counsel fees." *Pitkins* v. *Leavitt*, 13 Vt. 379.

In *Loomis* v. *Bedel*, 11 N. H. 74, Parker, chief justice, who delivered the opinion of the court, said: " No action can be maintained against the covenantor upon his covenant, except upon proof of the actual existence of a title superior to the one he conveyed, and which his grantee could not withstand at law; and if that proof is made out, with evidence that the title was asserted and yielded to, why should he be permitted to insist there must be a formal surrender of the possession, or actual entry, and that if this was not done there could be no breach of his covenant? How would his interest be benefited by the going out and going back again? The ouster, so far as holding under his title is concerned, is as effectual by a purchase, without actually leaving the premises, as it could be by peaceably leaving them, or even by an expulsion through the operation of legal process." *Sprague* v. *Baker*, 17 Mass. 590.

In Rawle on Covenants for Title, 283, it is said that " the weight of authority is in favor of the position that the purchase by the covenantee of an outstanding paramount title, when that title is actually asserted, will constitute such an eviction as will entitle him to damages upon his covenants for quiet enjoyment, or of warranty, measured by the amount he has thus paid, and necessary expenses of course, according to the decisions in this state and at common law. This rule as applied to one who has entered into possession under his deed is, no doubt, the true rule, and I have no doubt is fully sustained by the latest and best English decisions on the subject." *Patton* v. *McFarlane*, 3 Pa. St. 425; *Dickinson* v. *Vorhees*, 7 Watts & S. 409; *Brown* v. *Dickerson*, 12 Pa. St. 372.

In the last-named case the court says: " A technical ouster on a judgment at law is not absolutely necessary. We particularly refer to the learned and able opinion of Parker, C. J., in the supreme court of New Hampshire, in

*Loomis* v. *Bedel*, 11 N. H. 74, where it is held that where there is a conveyance, with a covenant of warranty, and there is in fact a superior title, which is asserted by offering the premises for sale at public auction, and the grantee under the subsequent conveyance yields to the superior title and purchases it, this assertion of title and purchase is a sufficient ouster to sustain an action on the covenant of warranty, notwithstanding there was no actual dispossession. It is further ruled that if one of several grantees under the subsequent conveyance makes the purchase and remains in possession, all may have their action on the covenant."

In *King* v. *Kerr*, 3 Ohio, 155, it is held that where, after judgment in ejectment, the defendant claims the benefit of the occupying-claimant law, under which the case is settled, actual eviction is not necessary to sustain an action on the warranty. See, also, *Foote* v. *Burnet*, 10 Ohio, 330.

The judgment is affirmed, with costs.