### EASTERN OREGON LAND CO. v. ANDREWS.

[77 Pac. 117.]

Public Lands — Prima Facie Evidence of Location of Grant.

1. On an issue as to the exterior limits of a land grant a certified copy of a diagram from the office of the Secretary of the Interior, showing the primary limits of the grant, establishes *prima facie* the limits as so shown, as it comes from an office the chief official of which was charged by law with the duty of adjusting the grant, and appears on its face to have been made with reference to proper legal subdivisions.

Idem.

2. On an issue as to the exterior limits of a wagon road land grant, the *prima facie* case made by the production of a diagram from the office of the Secretary of the Interior, showing the primary limits of the grant, is not overcome by introducing a plat from the office of the Secretary of the State in which the land is situated, certified by the Governor as correctly showing the location of the road, and the testimony of a surveyor that the land in question was outside the limits of the grant as measured from the line of construction shown on the state map, for no law required the filing of any map with any state official, nor does it appear that such map was the basis of the adjustment of the grant by the United States.

Evidence Disputing Government Patent.

3. A government patent is presumptive evidence that the land department of the United States had authority to issue it and that such power was rightfully exercised, and to overcome this presumption clear and convincing proof is required.

From Sherman: W. L. BRADSHAW, Judge.

Action of ejectment by the Eastern Oregon Land Company against William G. Andrews. The case comes here on a cross-bill in equity, so treated by stipulation of the parties, although in form an answer interposed as a defense to an action in ejectment instituted by the above plaintiff against defendant to recover the possession of the northwest quarter of the southwest quarter, otherwise described as lot 3, and the east half of the southwest quarter of section 7, township 1 north, range 17 east of the Willamette Meridian. The plaintiff claims title through grant by the general government by act of Congress approved February 25, 1867 (14 Stat. U. S. 409, c. 77), to The Dalles Military Wagon Road Company. The land lies within the limits of the old Northern Pacific Railroad grant, which was afterward forfeited by act of Congress approved September 29, 1890 (26 Stat. U. S. 496, c. 1040, U. S. Comp. St. 1901, p. 1598); and the defendant claims to have acquired the equitable title thereto through settlement by invitation and license of the Northern Pacific Railroad Company, and continuation of such settlement and purchase from the general government in pursuance of the forfeiture act and acts supplementary thereto. He alleges · that, after due and regular proof of settlement, he being qualified thereto, and the payment of all legal and necessary fees, including the purchase price required by law, the Register and Receiver of the local Land Office at The Dalles, Oregon, on December 22, 1896, duly issued to him a final cash receipt and certificate for the land; that thereafter the Secretary of the Interior, without warrant or authority of law, canceled the same; and that the United States still holds the purchase money and fees so paid. He further alleges that he has since 1886 been in the quiet, peaceable, and lawful possession of said premises,

and that since the issuance to him of said final certificate he has been and now is the equitable owner and entitled to the possession; that said premises are entirely outside of and beyond the limits of the company's grant, and for that reason a patent to the company under which plaintiff claims is void and without legal effect, in so far as it pertains thereto. The defendant being successful in the trial court, the plaintiff appeals.                REVERSED.

For appellant there was a brief over the name of *Huntington & Wilson*, with an oral argument by *Mr. Bela S. Huntington.*

For respondent there was a brief over the name of *Moore & Gavin*, with an oral argument by *Mr. James F. Moore.*

MR. JUSTICE WOLVERTON, after stating the facts in the foregoing terms, delivered the opinion of the court.

To support his cross-bill, the defendant introduced in evidence, over objection, a certified copy of the original map and plat of The Dalles Military Wagon Road, embraced within townships 1 and 2 south, ranges 16 and 17 east, of the Willamette Meridian, on file in the office of the Secretary of State at Salem, Oregon. The accompanying certificates show the original to have been calculated and platted from the field notes of the survey made by D. P. Thompson, the surveyor for the road company, certified to by him June 8, 1869, among which is one by George L. Woods, Governor of the State, attested by the Secretary, showing that the plat had been duly filed in his office, and that the road had been built and completed in all respects as required by the act of Congress and by the act of the Legislative Assembly of the State of Oregon, approved October 20, 1868, and that the same had been accepted. The road is indicated on this map by two lines, in the main parallel, although at some points they seem

to diverge, and at others to converge, so that the distance
between them is not altogether uniform.   Where it passes
the land in dispute, the government survey sectionizing
the public lands is indicated, showing the location of the
road with reference thereto.   A. W. Mohr, a civil engineer,
being called on behalf of defendant, produced a map,
which he testifies is an enlargement twelve times accord-
ing to scale of the certified map from the Secretary of
State's office, indicating the location of the land in dis-
pute with reference to the line of the road.   Upon this
map appear produced tangential curves, three miles dis-
tant from points on the road nearest to the land.   One set
of curves is extended from points designated on the north-
erly margin, and another set from points at the center of
the road.   Those extended from the margin touch the
southwest corner of the fractional southwest quarter of
section 7; one cutting the corner squarely, and the other
standing inside perhaps a tenth of a mile, but neither
of them touching the land in dispute.   Those extended
from the center of the road, however, do not reach sec-
tion 7 at any point.   Mohr further testifies that the margin
of the road is fifteen chains distant from the center, and
that the road is thirty chains wide at the points designated.
This map was also allowed to go in evidence over objec-
tions.   Defendant then produced and introduced in evi-
dence a certified diagram from the Department of the
Interior, showing the primary limits of the wagon road
grant as it affects the premises in question.   This diagram
shows the southwest quarter of section 7 to be within
the adjusted primary limits of the grant; the adjustment
appearing to have been made with reference to the small-
est legal subdivisions of the government survey.   Other
testimony adduced, showing the settlement of defendant
upon the land, his continuous residence thereon, the pay-
ment by him of the regular fees, including the purchase

price as required by law, the issuance to him of the final cash certificate therefor, and the subsequent cancellation thereof by direction of the Secretary of the Interior; and, finally, a certified copy of the United States patent No. 10, to The Dalles Military Wagon Road Company, was introduced, which comprises the disputed premises. Such, for all practical purposes, is the case made for defendant, and the especial and signal contention of counsel is that the land in controversy lies beyond the limits of the wagon road grant, and that, although patent has issued to that company, the defendant, by reason of his settlement and the payment of the purchase price to the general government, has become the owner in equity, and by reason thereof is entitled to have the patent declared void as it affects the defendant, and he decreed to be entitled to hold the legal title.

1. By the act of Congress of February 25, 1867 (14 Stat. U. S. 409, c. 77), there was granted to the State of Oregon, to aid in the construction of a military wagon road from Dalles City, on the Columbia River, by way of Camp Watson, Cañon City, and Mormon or Humboldt Basin, to a point on Snake River opposite Fort Boise, in Idaho Territory, alternate sections of public lands, designated by odd numbers, to the extent of three sections in width on each side of said road, which act also authorized the State, with a view to subserving the purposes of the grant, to dispose of such lands. Section 3 of the act prescribed that the road should be constructed with such width, gradation, and bridges as to permit of its regular use as a wagon road, and in such other special manner as the State of Oregon may direct; and section 6 directed the Surveyor General for the District of Oregon to cause the lands to be surveyed when the State should have enacted the necessary legislation to carry the act into effect. By an act of the Legislative Assembly of the State of

Oregon, approved October 20, 1868, all such lands, rights, and privileges accruing to the State by reason of such act of Congress were donated to The Dalles Military Road Company: Laws 1868, page 3. By a later act of Congress, approved June 18, 1874 (18 Stat. U. S. 80, c. 305, U. S. Comp. St. 1901, p. 1517), Congress authorized the issuance of patents for such lands where the road has been shown by the certificate of the Governor of the State to have been constructed and completed as in the original grant provided. The Surveyor General has, of course, made the contemplated survey of the public lands along the course of the located road as it passes the premises demanded, as no map could otherwise have been made of the primary limits of the grant; and the diagram certified to by the Acting Commissioner of the General Land Office must be taken *prima facie* to indicate correctly the exterior limits thereof. How the adjustment of the grant was made does not appear. Presumably it was by the Secretary of the Interior, whose duty it was to make all such adjustments with relation to the public domain and to administer the grant; and, manifestly, from an inspection of the diagram, it was made with reference to the smallest legal subdivisions, which was probably in accord with the rules and practice of the interior department of the general government: 26 Am. & Eng. Enc. Law, 377 ; *Altschul* v. *Clark,* 39 Or. 315 (65 Pac. 991) ; *Knight* v. *United States L. Assoc.* 142 U. S. 161 (12 Sup. Ct. 258 ; *Orchard* v. *Alexander,* 157 U. S. 372 (15 Sup. Ct. 635) ; *Bishop of Nesqually* v. *Gibbon,* 158 U. S. 155 (15 Sup. Ct. 779) ; *Scott* v. *Kansas Pac. Ry. Co.* 5 Land Dec. Dep. Int. 468 ; *Missouri, Kan. & T. Ry. Co.* 11 Land Dec. Dep. Int. 130. *Prima facie,* at least, this diagram shows that the road company, from which plaintiff deraigns title, was entitled to all lands designated by odd sections within the designated exterior

boundary, and consequently that the patent was regularly issued to the company.

Such being the record of the interior department, it entails upon the defendant the burden of impeaching it. To do this, counsel rely upon the certified plat from the Secretary's office, and the measurements and deductions made therefrom by the witness Mohr, as demonstrated by his enlarged plat, showing the three-mile limit by tangential lines drawn from points nearest the premises. The plat from the Secretary's office appears from accompanying certificates to have been made from the field notes of the survey of the road ; but it is unaccompanied by the field notes. The certificate of Governor Woods attests that the plat shows, in connection with the public surveys so far as then made, the location of the line or route as actually surveyed, and upon which the road company's road was constructed, and that the road had been built and completed in all respects as required by the acts of Congress and the legislature of the State. Neither the act of Congress nor of the legislative assembly of the State required that any such map or plat should be filed in the office of the Governor or of the Secretary of State ; nor does it appear that the plat so filed was the one approved by the Secretary of the Interior, representing the final survey and definite location of the road, much less that the Secretary of the Interior made use of the plat, or made his adjustment from it as the basis for determining the limits of the grant. Mr. Mohr seems to have treated the two parallel lines shown on the plat from the Secretary of State's office as indicating the outside marginal limits of the road, as well as the route of location, and, pursuing the idea, has made it thirty chains, or three eighths of a mile, in width at the points located nearest the land in dispute, selected as the

45 Or.——14

bases of his tangential measurements. It is hardly possible that the road should have been surveyed and located at any point of this width; the more reasonable hypothesis being that the two lines were used together to indicate the route of the surveyed line, with no intention of designating thereby the marginal limits, and that the witness has mistaken the very basis of his deductions. If wrong in his premises, he is inevitably wrong in his conclusions. But, with all this, giving full credence to the plat as indicating the final location of the road as constructed, and conceding that Mohr is correct in his premises, it does not appear to us that it is sufficient to impeach the official record of the land department of the general government; that is to say, it is not the better evidence as to the regularity of the adjustment of the grant.

3. If the land in dispute was without the grant, the Secretary of the Interior was without power or authority to place it within, much less to issue a patent therefor to the road company: *Doolan* v. *Carr*, 125 U. S. 618 (8 Sup. Ct. 1228); *Burfenning* v. *Chicago, St. Paul, M. & O. Ry. Co.* 163 U. S. 321 (16 Sup. Ct. 1018). But to show that fact there must needs be competent proof of it, and to show it against the *prima facie* records of the land department the proofs must not only be competent, but clear and convincing. A patent of the United States is presumptive evidence that the department had jurisdiction and that it rightfully exercised it, and, if there could have been any state of facts which under the laws would have given the department jurisdiction to dispose of the land comprised in the patent, the presumption is that such state of facts existed: *King* v. *McAndrews*, 111 Fed. 860 (50 C. C. A. 29); *St. Louis Smelt. Co.* v. *Kemp*, 104 U. S. 636. There is undoubtedly a map of definite location of this road on file with the land department and approved by that department (see *Wilcox* v. *Eastern Or. L. Co.* 176

U. S. 51, 57, 20 Sup. Ct. 269), which forms the real basis for the adjustment of the grant and constitutes the best evidence upon the subject, and, until that is produced and shown to be inaccurate, or the adjustment made from that as a basis is proven unwarranted, we cannot presume to set aside and nullify the action of the Secretary of the Interior, and declare void a patent issued by the general government. The defendant must therefore fail upon his proofs, as not having overcome by competent evidence the *prima facie* title of the plaintiff, exhibited by the records of the land department.

It follows the decree of the trial court must be reversed, and the cross-bill dismissed; and it is so ordered.

REVERSED.

---

Decided 27 June, 1904.