(No. 6922.   December 31, 1941)

NORMAN ELLIOTT, Appellant, v. RICHARD A. THOMPSON and BESSIE B. THOMPSON, husband and wife, Respondents.

(120 Pac. (2d) 1014)

Rehearing denied January 31, 1942

George Donart and Blaine Hallock, for Appellant.

Frank D. Ryan and Ed. R. Coulter, for Respondents.

GIVENS, J.—Appellant sued respondent, his grantor, under the covenant of warranty of fee simple title[1] in the warranty deed of May 15, 1936, conveying, among other lands, Section 33, Township 14 South, Range 41 East Willamette Meridian, in Malheur County, Oregon, for a consideration of $2,000.

The controversy emanates from this historical setting, as appears from the stipulation and abstract of title: February 15, 1867, Congress (Vol. 14, U. S. Statutes at Large, p. 409, Ch. 77 of the 2d Session of the 39th Congress) granted to the state of Oregon for the Dalles Military Road from Dalles City, on the Columbia River, to a point on the Snake River opposite Fort Boise (quite evidently the fort established in 1834 at the mouth of Boise River and not the one established in 1863 at the present site of the city of Boise), alternate, staggered, opposed sections of public lands, designated by odd numbers, to the extent of three sections in width on each side of said road, with lieu sections within ten miles on each side, the lands to be disposed of by the legislature of the state and the proceeds used solely for the construction of said road,

---

[1] "And Richard A. Thompson and Bessie B. Thompson, husband and wife, grantors above named do covenant to and with Norman Elliott the above named grantee, his heirs and assigns, that they are lawfully seized in fee simple of the above granted premises, that the above granted premises are free from all incumbrances, and that they will and their heirs, executors and administrators shall warrant and forever defend the above granted premises, and every part and parcel thereof, against the lawful claims and demands of (f) all persons whomsoever."

title to the land so sold to pass upon certificate by the governor to the secretary of the interior of completion of each ten miles of continuous construction.[2]

The legislature of Oregon, October 20, 1868 (Laws of Oregon, 1868, p. 3) accepted the grant,[3] and by said act transferred the granted lands to the Dalles Military

[2] "An Act granting Lands to the State of Oregon to aid in the Construction of a military Wagon Road from Dalles City, on the Columbia River, to Fort Boise, on the Snake River.

Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That there be, and hereby is, granted to the State of Oregon, to aid in the construction of a military wagon road from Dalles City, on the Columbia river, by way of Camp Watson, Canon City, and Mormon or Humboldt Basin, to a point on Snake river opposite Fort Boise, in Idaho Territory, alternate sections of public lands, designated by odd numbers, to the extent of three sections in width on each side of said road: Provided, That the lands hereby granted shall be exclusively applied to the construction of said road, and to no other purpose; and shall be disposed of only as the work progresses: And provided further, That any and all lands heretofore reserved to the United States, or otherwise appropriated by act of Congress or other competent authority, be, and the same are hereby, reserved from the operation of this act, except so far as it may be necessary to locate the route of said road through the same, in which case the right of way to the width of one hundred feet is granted: And provided further, That the grant hereby made shall not embrace any mineral lands of the United States.

\* \* \* \* \*

Sec. 4. And be it further enacted, That the State of Oregon is authorized to locate and use in the construction of said road an additional amount of public lands, not previously reserved to the United States nor otherwise disposed of, and not exceeding ten miles in distance from it, equal to the amount reserved from the operation of this act in the first section of the same, to be selected in alternate odd sections as provided in section first of this act.

Sec. 5. And be it further enacted, That lands hereby granted to said State shall be disposed of only in the following manner, that is to say: when the governor of said State shall certify to the Secretary of the Interior that ten continuous miles of said road are completed, then a quantity of the land hereby granted, not to exceed thirty sections, may be sold, and so on from time to time until said road shall be completed; and if said road is not completed within five years, no further sales shall be made, and the lands remaining unsold shall revert to the United States.

\* \* \* \* \* \*"

[3] [after reciting the act of Congress, the legislative act reads]
Therefore, Be it enacted by the Legislative Assembly of the State of Oregon.

Road Company, which had filed its articles of incorporation March 9, 1868. June 23, 1869, the Honorable George L. Woods, then governor of the state of Oregon, made his certificate of completion of the road,[4] certifying to the

Section 1. That there is hereby granted to the Dalles Military Road Company, incorporated, as appears by the Articles of Incorporation filed in the office of the Secretary of State on the 30th day of March 1868 all lands, right of way, rights, privileges and immunities heretofore granted or pledged to this State by the Act of Congress in this Act heretofore recited, for the purpose of aiding said Company in constructing the road mentioned and described in said Act of Congress upon the conditions and limitations therein prescribed.

Section 2. There is hereby granted and pledged to said Dalles Military Road Company, all moneys, lands, rights, privileges and immunities which may hereafter be granted to this State to aid in the construction of such road, for the purposes and upon the conditions mentioned in said Act of Congress, or which may be mentioned in any further grants of money or lands to aid in the construction of said road.

Section 3. The said Dalles Military Road Company is hereby authorized to locate the lands mentioned in the fourth section of the above recited act, subject to the approval of the Governor."

[4] "Executive Office, Salem, Oregon, June 23d, 1869 I, George L. Woods Governor, of the State of Oregon, do hereby certify that this plat or map of the Dalles Military Road has been duly filed in my office by the D. M. R. Company and shows in connection with the public surveys, as far as said public surveys are completed, the location of the line of route as actually surveyed and upon which their road is constructed in accordance with the requirements of an act of Congress approved February 25th, 1867, entitled 'An Act granting lands to the State of Oregon to aid in the construction of a military wagon road from Dalles City on the Columbia River to Fort Boise on Snake River,' and with the act of the legislative assembly of the State of Oregon approved October 20, 1868, entitled 'An Act donating certain lands to Dalles Military Road Company' I further certify that I have made a careful examination of said road since its completion and that the same is built in all respects as required by the said above recited act and that said Road is accepted.

In testimony whereof I have hereunto set my hand and caused to be affixed the Great Seal of the State of Oregon.
Done at Salem, Oregon June 23d, 1869.

Geo. L. Woods

Attest
Samuel E. May
Secretary of State
[State Seal]"

route thereof as shown on a map, certified by the general land office.[5] June 18, 1874, Congress passed a statute providing for the method of transfer of title under such grants as the above (Vol. 18, U. S. Statutes at Large, p. 80, Ch. 305, of the 1st Session of the 43rd Congress, 43 U. S. C. A. sec. 862),[6] which evidently applied only partially herein, because prior to the date of the enactment of this statute the state of Oregon had by public act transferred its interest in said lands; in other words, by this

[5]          "United States Department of Interior
General Land Office
Washington
July 30, 1940

I hereby certify that the annexed copy of Map of the Dalles Military Road, in two parts, received October 28, 1869, filed as Map 7, Tube 70, is a true and literal exemplification of the original on file in this office in my custody.

In testimony whereof, I have hereunto subscribed my name and caused the seal of this office to be affixed, at the city of Washington, on the day and year above written.

A. E. Douhan
Acting Assistant Commissioner
of the General Land Office."

[Land Office Seal]

[6] "An act to authorize the issuance of patents for lands granted to the State of Oregon in certain cases.

Whereas certain lands have heretofore, by acts of Congress, been granted to the State of Oregon to aid in the construction of certain military wagon-roads in said State, and there exists no law providing for the issuing of formal patents for said lands: Therefore,

Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That in all cases when the roads in aid of the construction of which said lands were granted are shown by the certificate of the governor of the State of Oregon, as in said acts provided, to have been constructed and completed, patents for said lands shall issue in due form to the State of Oregon as fast as the same shall, under said grants, be selected and certified, unless the State of Oregon shall by public act have transferred its interests in said lands to any corporation or corporations, in which case the patents shall issue from the General Land Office to such corporation or corporations upon their payment of the necessary expenses thereof: Provided, That this shall not be construed to revive any land grant already expired nor to create any new rights of any kind except to provide for issuing patents for lands to which the State is already entitled.

Approved, June 18, 1874."

statute as to this grant, patents would issue from the general land office to such corporation instead of from the state of Oregon, thereby necessarily contemplating subsequent transfer by the company to the individual occupants, purchasers therefrom.

May 31, 1878, the Dalles Military Road Company transferred all of the above granted lands to Edward Martin, who, together with his wife, in turn, by quitclaim deed, transferred the specific section in question, February 27, 1878, to John M. Marden, whence by mesne conveyances it was transferred to respondent, who, in turn, with his wife, gave the present deed, upon the covenants of which this suit was brought by appellant.

March 2, 1889, Congress, by chapter 277, page 850, Vol. 25 of the Statutes at Large, 2d Session of the 50th Congress,[7] empowered the attorney general of the United

---

[7] "An act providing in certain cases for the forfeiture of wagon-road grants in the State of Oregon.

Whereas the United States have heretofore made various grants of public lands to aid in the construction of different wagon-roads in the State of Oregon, and upon the condition that such roads should be completed within prescribed times; and

\* \* \* \* \* \* Therefore,

Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That it is hereby made the duty of the Attorney-General, within six months after the passage of this act, to cause suit or suits to be brought, in the name of the United States, in the United States circuit court for the district of Oregon, against all persons, firms, and corporations claiming to own or to have an interest in the lands granted to the State of Oregon by the following enumerated acts of Congress, to wit:

\* \* \* \* \* \*

'An act granting lands to the State of Oregon to aid in the construction of a military wagon-road from Dalles City, on the Columbia River, to Fort Boise, on the Snake River,' approved February twenty-fifth, eighteen hundred and sixty-seven;

To determine the questions of the seasonable and proper completion of said roads in accordance with the terms of the granting acts, either in whole or in part, the legal effect of the several certificates of the governors of the State of Oregon of the completion of said roads, and the right of resumption of such granted lands by the United States, and to obtain judgments, which the court is hereby authorized to render, declaring forfeited to the United States all of such lands as are coterminous with the part or parts of either of

States by suits in the name of the United States to test the legality of the conception and consummation of road land grants, expressly enumerating the one involved herein.

In 1889, following the passage of this statute, the attorney general instituted litigation[8] which ultimately determined that the grant as such was legal and valid, and, as to the lands generally included therein, was in praesenti, but did not for two reasons pass upon any particular piece of land: first, as applied to appellants and respondents this section had been transferred prior to the enactment of the statute under which such suits were brought and was evidently exempted therefrom; and, in the second place, the judicial determination applied only to the grant and not to any particular piece of land, it being elsewhere stated that such grant, until specific pieces of land are deeded thereunder, is a mere float. (*Eastern Oregon Land Co. v. Brosnan*, (Ore.) 147 Fed. 807; *Leavenworth etc. R. R. Co. v. United States*, 23 L. Ed. 634. Also, *United States v. Southern Pacific Railroad Co.*, 36 L. Ed. 1091, at 1097, 146 U. S. 570.) Hence, the decisions on this grant are not authority, so far as this

---

said wagon-roads which were not constructed in accordance with requirements of the granting acts, and setting aside patents which have issued for any such lands, saving and preserving the rights of all bona fide purchasers of either of said grants or of any portion of said grants for a valuable consideration if any such there be. * * * * * * [providing manner of trial, appeal, etc., permitting interested parties to intervene, requiring restoration of forfeited lands to public domain, and providing for issue of patent to grants upheld] Provided further, That the lands actually settled upon or occupied and used as a homestead or for agricultural or grazing purposes, in cases in which such settler or occupant has acquired the title of the State of Oregon under the grants recited in the first section of this act to the same, not exceeding one section to any one settler or occupant, shall not be included in such suit, and such settler or occupant shall not be made a party thereto, anything in this act to the contrary notwithstanding.

Approved, March 2, 1889."

[8] *United States v. Dalles Military Road Co.*, 35 L. Ed. 560, 40 Fed. 114, 41 Fed. 493; *The United States v. The Dalles Military Road Co.*, 37 L. Ed. 362, 148 U. S. 49; compare *United States v. California & Oregon Land Co.*, 37 L. Ed. 354, 148 U. S. 31.

litigation is concerned, beyond the point that the grant as such was legal. Though at the time the grant was made, the road built, and the plat was made, with the certificate of the governor of Oregon attached thereto, no public survey had been made, at least, of all the lands, and in particular, of the section involved herein, it is conceded that this section as finally surveyed lay within the primary limits of the grant, that it was not mineral land, and therefore subject to and legitimately susceptible to initial transfer by the company to Martin and by Martin to Marden and thence through the subsequent chain of title.

Some time in 1917 the secretary of the interior upon application of the commissioner of the general land office closed this grant, requiring the Eastern Oregon Land Company, the successor in interest of the Dalles Military Road Company, to file its acquiescence in the final adjustment of the grant upon the basis that the grantee select the then determined deficiency of 36,066.55 acres. (Eastern Oregon Land Co., Successor to Dalles Military Road Co., 45 Land Dec. 613.) This section was never designated by the company as specifically coming within the grant and it was never clear-listed by the company, the state, or otherwise, and no patent issued therefor to anyone.

July 10, 1910, Charles E. Smith made homestead entry No. 01505, Vale, for the north half of this section, and on July 19, 1910, Brit W. Martin made homestead entry No. 01506, Vale, for the south half. November 15, 1911, John E. Marden filed a protest against the entries, alleging that the Dalles Military Road Company by deed dated February 23, 1873, conveyed all of this section to him; and the general land office, acting on Marden's protest, and in view of the fact that the land was situated within the primary limits of the Dalles Military Road Company, on November 30, 1912, canceled said entries Nos. 01505 and 01506.

The lands evidently had been on the tax rolls of Malheur County for some time prior and up until March, 1936, when, pursuant to directions of the acting assistant commissioner of the land office at Washington, D. C., asserting that the same constituted a part of the public

domain of the United States, the assessor of Malheur County withdrew the same from the assessment rolls of said county. Thereupon appellant applied to the general land office at Washington, D. C. for a patent from the United States to him of the above described lands, which application was denied April 19, 1938, whereupon an appeal was taken to the secretary of the interior, who rendered his decision January 16, 1939, affirming the action of the commissioner and refusing patent, holding that though the grant was in praesenti, it was only general, and since these lands had never been specified or listed by the company with the land office, and that by the decision closing the grant in 1912, it having been determined that exclusive of these lands and crediting the selections made under that closing order of other lands, the total acreage of the grant had been selected, hence this section was without the terms of the grant and the secretary of the interior had no power or authority to issue a patent therefor or recognize the title thereof as being in appellant.

The present action was thereupon instituted to recover the costs and expenses incurred by appellant in prosecuting such application and appeal before the department of the interior, consisting of $250 attorneys' fees in connection therewith, and $800 thereafter paid by appellant in purchasing the land under Section 5, of Chapter 376, Vol. 24, U. S. Statutes at Large, p. 556, Act of March 3, 1887, 43 U. S. C. A. sec. 898, as suggested and held essential by the land department for the securing of title by him, and $7.50 publication of notice to purchase said land, and $2 fee to the commissioner of the land office for proof thereon.

The trial court held that the land passed by the grant, and the refusal of the patent was a mere refusal to issue the evidence of title, the United States had not interfered with appellant's possession except by placing this land within a Taylor grazing area, and an action could be maintained enjoining the administrators of that act from evicting or interfering with appellant, and there has been no such failure of title as would justify the imposi-

tion of damages sought under the covenant in the warranty deed.

It must be clearly kept in mind that this is an action for damages for breach of covenant of warranty, not only of fee simple title at the time the conveyance was made by respondents to appellant, but to "warrant and forever defend." Respondents urge that the warranty to defend applies only to lawful claims and that the claim of title by the secretary of the interior in the United States is not such, more of which anon.

The question before us therefore is whether in the record before us appellant has shown such a defeat of his title or the existence of an adverse title sufficient in point of conclusiveness to entitle him to relief under the warranty.

The situation in principle is exactly the same as that considered by this court in *Madden v. Caldwell Land Co.*, 16 Idaho 59, at 67, 100 Pac. 358, 21 L. R. A. (N. S.) 332, 2 Sutherland on Damages, sec. 605, p. 2101, where the court stated:

"Here the vendor at the time of making the conveyance to respondent Madden [Martin to Marden] had a good, clear and fee simple title, and the deed of conveyance made and delivered to respondent was sufficient to transfer and convey the same title to the vendee. Every covenant, warranty and representation made in the deed was at the time true, and the deed contained no false or fraudulent representation so far as it referred to facts existing at the time of its delivery. The whole trouble arose from a subsequent act committed by the vendor. The vendee failed and neglected to record her deed of conveyance. This was no violation of the contract on her part nor of any provision of law. The deed as between the vendor and vendee was just as valid and binding against the vendor before recording as afterward. The vendor cannot excuse or justify himself for reconveying the land simply because a previous vendee has failed and neglected to record his deed. * * * *

"Appellant [the Dalles Military Road Company] had no right to execute any instrument that would in any way cloud or affect respondent's title, and to do so was a

violation of appellant's covenants contained in the deed. (*West Coast Mfg. & Inv. Co. v. West Coast Impr. Co.*, 31 Wash. 610, 72 Pac. 455.) The breach complained of in this case consists in a violation of the covenant contained in the deed made by appellant to respondent, whereby it agreed to warrant and defend the 'quiet and peaceable possession of the property in the vendee' against all its own acts and the acts of its 'successors and assigns.' Instead of appellant living up to that covenant and agreement contained in its deed, it proceeded to violate it, and executed a deed of conveyance to Froman, and Froman placed his deed of record, and, being an innocent purchaser for value, took the title. Not satisfied with this alone, the appellant, as shown by the record, paid Froman's attorney fees for prosecuting the action in ejectment against appellant's prior grantee, the respondent herein. The nearest approach to the facts of this case we have found is that in the case of *Curtis v. Deering*, 12 Me. 499. In that case the prior conveyance was a mortgage which, under the laws of that state, passed title, but it was not placed of record until after a subsequent deed was recorded. The court held that the measure of damages was the amount due on the mortgage."

The breach herein comparable to the above consisted in the Dalles Military Road Company and its successors in interest failing, at the time of the settlement with the land office in 1917, to see that the transfers previously made were properly taken care of in regard to the total amount of land to which they were entitled. *Madden v. Caldwell Land Co., supra*, holds in line with universal authority that one may recover on such a warranty as contained in the deed in question the expenses connected with litigation *unsuccessfully* attempting to validate the title received, and the cost of extinguishing an adverse title.

"In a case like this we have no doubt but that the measure of damages to be applied is that of adequate compensation for the actual injury, or, as it is sometimes expressed, 'damages for the loss of the bargain.' The actual damages which the vendee has sustained by reason of the breach of the contract to warrant and defend the

title and peaceable possession in the vendee is the amount to be recovered in this case. [citing authorities.]" *Madden v. Caldwell Land Co.*, 16 Ida. 59, at 69, supra.

See further cases cited and digested in 61 A. L. R. 154 and 100 A. L. R. 1203; compare, if the grantee is successful, 105 A. L. R. 734.

Appellants kept respondents advised at all times as to the proceedings undertaken by him to secure recognition of his title from the only party who could ultimately give good title, namely, the government of the United States. The authorities universally hold that where title is in the government or the state, a suit for damages on such warranty may be brought though there has been no actual eviction. *Harrington v. Clark,* 56 Kans. 644, 44 Pac. 624; *Jennings v. Kiernan,* 35 Ore. 349, 55 Pac. 443; *Whatcomb Timber Co. v. Wright,* 102 Wash. 566, 173 Pac. 724; *Burr v. Greeley,* (Mo.) 52 Fed. 926; *Brown v. Allen,* 10 N. Y. S. 714; *McGary v. Hastings,* 39 Cal. 360; *Glenn v. Thistle,* 23 Miss. 42; *Dillahunty v. Little Rock etc. Co.* 59 Ark. 629, 27 S. W. 1002; *Pevey v. Jones,* 71 Miss. 647, 16 So. 252; *Seldon v. Dudley E. Jones Co.,* 74 Ark. 348, 85 S. W. 778; *Cover v. McAden,* 183 N. C. 641, 112 S. E. 817; *Beecher v. Tinnin,* 26 N. M. 59, 189 Pac. 44; *East Canyon etc. Co. v. Davis,* 65 Utah 560, 238 Pac. 280; *Albright v. Schwabland,* 98 Neb. 190, 152 N. W. 301; *Efta v. Swanson,* 115 Minn. 373, 132 N. W. 335.

The rule is also recognized and has been repeatedly announced that a grantee under a warranty of this character, who advises the grantor of litigation pending and which results in a determination that the title conveyed is invalid as against other outstanding adverse title, immediately upon such determination has a cause of action, and the grantor who fails to aid in the previous litigation, after such notice, is conclusively bound by such determination.

"If a warrantor has no notice of the action against his grantee, and no opportunity of showing therein that he transferred a good title, he cannot, in any sense, be considered a party to the action, and therefore ought not to be bound by an adjudication of the question of title. But, if he has notice, he may become a party to the suit, and it

is his own fault if his title is not fully presented and investigated. He then has an opportunity of sustaining the title he has warranted and defeating a recovery by the plaintiff in ejectment. If he fails to do this successfully, he is concluded from afterward asserting the superiority of that title, and compelled to refund the purchase money, with interest. By giving the warrantor notice, the defendant in ejectment may relieve himself from the burden of afterward proving the validity of the title under which he is evicted. But, if he neglects to give the notice, he must come prepared to prove, on the trial of the action of covenant, that he was evicted by force of an adverse and superior title; in other words, he must show that the warrantor, by appearing and defending the action of ejectment, could not have prevented a recovery. [citing authorities.]" *Council Imp. Co. v. Pacific & Idaho Co.*, 29 Ida. 113, at 116-7, 157 Pac. 258.

See also *Bliss Townsite Co. v. Morris-Roberts Co.*, 33 Ida. 110, 190 Pac. 1028; *Scoggin v. Hudgins*, 78 Ark. 531, 94 S. W. 684, 115 Am. St. Rep. 60; *Collier v. Cowger*, 52 Ark. 322, 12 S. W. 702, 6 L. R. A. 107; *Carpenter v. Carpenter*, 88 Ark. 169, 113 S. W. 1032; *Fels v. Ezell*, 183 Ark. 229, 35 S. W. (2d) 359; *Bollenbacher v. Lee*, 75 Ind. A. 330, 121 N. E. 663; *Estep v. Bailey*, 94 Ore. 59, 185 Pac. 227, at 230; *Washington Gaslight Co. v. District of Columbia*, 40 L. Ed. 712; *Hammond v. Oregon & C. R. Co.*, 117 Ore. 244, 243 Pac. 767; 15 C. J., p. 315, sec. 217; 21 C. J. S., p. 1004, sec. 132, note 34; *Kellar v. Lindley*, 203 Iowa 57, 212 N. W. 360; *Caldwell v. Blodgett*, (N. D.) 256 Fed. 744; *Morgan v. Haley*, 107 Va. 331, 58 S. E. 564, 13 L. R. A. (N. S.) 732 *Lashley v. Lashley*, 205 Ky. 601, 266 S. W. 247; *Burchett v. Blackburne*, 198 Ky. 304, 248 S. W. 853; *Smith v. Nussbaum*, (Mo.) 71 S. W. (2d) 82; *Cover v. McAden*, 183 N. C. 641, 112 S. E. 817; *Sherman v. Piner*, (Tex.) 91 S. W. (2d) 1185; see 34 A. L. R. 1429 and 1918B L. R. A. 52; *Council Imp. Co. v. Pacific & Idaho Co.*, 29 Ida. 113, 157 Pac. 258; *Bliss Townsite Co. v. Morris-Roberts Co.*, 33 Ida. 110, 190 Pac. 1028. *Madden v. Caldwell Land Co.*, 16 Ida. 59, 100 Pac. 358, by citing with approval the following cases adopted the law therein announced declaring such rule and more fully expounded

and applied in 29 Ida. at 116, ante: *Hamilton v. Cutts,* 4 Mass. 349, 3 Am. Dec. 222; *Drew v. Towle,* 30 N. H. 531, 64 Am. Dec. 309; *Merritt v. Morse,* 108 Mass. 270; *Green v. Irving,* 54 Miss. 450, 28 Am. Rep. 360; Rawle on Covenants, p. 289; 2 Sutherland on Damages, sec. 604, p. 2096.

The secretary of the interior has original, exclusive jurisdiction to pass upon questions concerning the title to public lands as passing from the United States. *Standard Oil Co. of California v. United States,* 107 Fed. (2d) 402; *Knight v. United Land Association,* 35 L. Ed. 974, 142 U. S. 160; *Johanson v. Washington,* 190 U. S. 179, 23 S. Ct. 825, 47 L. Ed. 1008; *Pengra v. Munz,* 29 Fed. 830; *U. S. v. Winona, etc., R. Co.,* 67 Fed. 948, 15 C. C. A. 96, affirmed 165 U. S. 463, 17 S. Ct. 368, 41 L. Ed. 789; *U. S. v. Schlierholz,* 133 Fed. 333; *Neff v. U. S.,* 165 Fed. 273, 91 C. C. A. 241; *New Dunderberg Min. Co. v. Old,* 79 Fed. 598; *King v. McAndrews,* 111 Fed. 860, 50 C. C. A. 29; *Knight v. United Land Ass'n,* 12 S. Ct. 258, 142 U. S. 161, 35 L. Ed. 974; *Orchard v. Alexander,* 15 S. Ct. 635, 157 U. S. 372, 39 L. Ed. 737; *Hawley v. Diller,* 20 S. Ct. 986, 178 U. S. 475, 44 L. Ed. 1157. His findings of fact are conclusive upon the courts. *Clear Lake Power etc. Co. v. Chriswell,* 31 Ida. 339, 173 Pac. 326; *Hurst v. Idaho Iowa L. & R. Co.,* 42 Ida. 436, 246 Pac. 23; 50 C. J. 1089, sec. 485. His rulings, however, on questions of law may be reviewed. 50 C. J. 1091, sec. 486; *Hawley v. Diller,* 44 L. Ed. 1157, 178 U. S. 475.

Both reason and principle sustain the proposition that the decisions by the secretary of the interior on land matters are the equivalent of a judgment of a court; he has exclusive jurisdiction over public land matters, in the determination of which he may exercise discretion. His findings of fact are conclusive, his conclusions of law are not and may be reviewed in courts of competent jurisdiction and in appropriate actions. The decision of the secretary of the interior therefore, in this case, is the equivalent of a judgment of a court (*Rogers v. DeCambra,* 132 Cal. 502, 60 Pac. 863, at 864) and until set aside, reversed, or otherwise modified is a definite determination that the title passed by respondents to appellant was void,

which immediately brings into play the force and effect of the decisions above noted entitling appellant to damages. *King v. Merk,* 6 Mont. 172, 9 Pac. 827.

■ Respondents contend appellant mistook his remedy and that it should have been a suit at law instead of a proceeding in the land department. Before the courts will assume jurisdiction the land department must have acted and the party exhausted his remedies there. *Litchfield v. Richards,* 19 L. Ed. 681, 76 U. S. 575; *Kendall v. Long,* 66 Wash. 62, 119 Pac. 9. The secretary of the interior had jurisdiction over the title herein as disposing of public land. *Logan v. Davis,* 58 L. Ed. 1121, 233 U. S. 612; *Altschul v. Clark,* 39 Ore. 315, 65 Pac. 991. If patent had issued, a different situation would obtain. *Eastern Oregon Land Co. v. Andrews,* 45 Ore. 203, 77 Pac. 117.

■ The determination by the secretary stands as an absolute bar at the present time. It is urged that appellants should have tested such decision in courts of law, and until that has been done it is not final and conclusive. The complete answer to this is that the appellant as grantee by notifying respondent as grantor of these proceedings in the land department charged the grantor with the duty of either participating or being conclusively bound, and it was the duty of the grantor to take appropriate action if he desired to have the decision of the secretary of the interior changed.

Respondent urges the patent is of no importance and that appellant has title and the patent is mere evidence thereof. But the secretary of the interior went beyond denying patent; he held title is in the United States.

The bulk of respondent's brief is devoted to demonstrating appellant had a good title. Such contention should have been presented to the secretary of the interior, since respondents had notice of such proceeding, or, if they so desired and cared to protect themselves, in appropriate court action challenging the secretary's determination. Not having so appeared, they are not absolved from liability on their warranty and, by *Madden v. Caldwell Land Co.,* 16 Ida. 59, and *Council Imp. Co. v.*

*Pacific & Idaho Co.*, 29 Ida. 113, 157 Pac. 258, stand charged with making good the title they warranted.

The sole extent of our power is to determine whether or not the appellant sufficiently proved as a basis for his claim of damages that an adverse title had in a proper proceeding, of which the grantor had ample notice, which is admitted, defeated the title granted him. We recognize that the grantors, respondents herein, were originally without fault, and loss is thus thrust upon them for which they were not initially responsible and concerning which, as to whether they have a cause of action over against their grantors, we express no opinion. As between appellant and respondents, however, respondents were not without fault, because they transferred under a warranty a defective title, and the rule announced in *Madden v. Caldwell Land Co.*, 16 Ida. 59, supra, as applied to a suit of this kind, thus announced, is applicable:

"The rule is quite general, we think, that where one of two persons must suffer loss, that the loss should properly fall upon the one most culpable and who could most easily have avoided its consequences, and on whom the greater duty to discover the cause and defect rested. It seems self-evident to us that in case of a breach of a covenant of warranty, or a covenant for quiet and peaceable possession, the greater duty must of necessity rest upon the vendor to have discovered the condition of his title."

We must decide the issues between the parties before us and upon the record and the legal propositions thereby presented.

The judgment of the trial court is therefore reversed and the trial court instructed to enter judgment for the costs, expenses, purchase price, and interest, of the land necessarily incurred. (*Hammond v. Oregon & C. R. Co.*, 98 Ore. 1, 193 Pac. 457; *Hammond v. Oregon & C. R. Co.*, 117 Ore. 244, 243 Pac. 767), all being held in *Madden v. Caldwell Land Co.*, 16 Ida. 59, supra, to be legitimate and proper elements of expense and damage in

an action of this kind, since less than the purchase price, within the limit allowed in *Council Imp. Co. v. Pacific & Idaho Co.*, 29 Ida. 113, supra. *North v. Brittain*, 154 Tenn. 661, 291 S. W. 1071, 61 A. L. R. 6 and annotation. Costs awarded to appellant.

Budge, C.J., Morgan, Holden, and Ailshie, JJ., concur.